[S. F. No. 5567.   Department Two.—December 27, 1911.]

JAMES CONLIN, Respondent, v. E. T. OSBORN, Appellant.

RESCISSION OF CONTRACT TO PURCHASE LAND—RESTORATION COLLATERAL TO PURCHASE NOT REQUIRED.—Where a vendee has a cause of action to rescind a contract for the purchase of land, it is not a prerequisite thereto that he should pay to the vendor the value of an abstract of title loaned to him by the vendor, which was destroyed by inevitable accident, nor that he should offer to pay to the vendor a commission paid by him to his agent for negotiating the sale to the plaintiff, where neither the abstract nor the commission paid formed any part of the contract of purchase, or was received thereunder.

ID.—CONTRACT TO PURCHASE IMPROVED LAND—GROUND FOR RESCISSION—BURNING OF IMPROVEMENTS—FAILURE OF CONSIDERATION IN "MATERIAL RESPECT."—An executory contract to purchase land "with the improvements thereon" may be rescinded by the purchaser for a material partial failure of consideration, under subdivision 4 of section 1689 of the Civil Code, providing therefor "if such consideration before it is rendered to him fails in a material respect from any cause."  The failure of the consideration for such purchase is in a "material respect" when such improvements constituted a material

part of the consideration for the purchase, and were burned down, without the purchaser's fault, before the contract was consummated.

Id.—Effect of Rescission—Right to Recover Deposit.—The purchaser who rescinds the contract, in such case, has the right to recover back the money deposited under the contract.

Id.—Construction of Code—"Material Respect"—Partial Failure of Consideration — Consistency with Other Provisions.—The words "material respect," as used in subdivision 4 of section 1659 of the Civil Code, are not to be construed as necessarily implying something going to the whole essence of the contract, as distinguished from a partial failure of the consideration "in a material respect"; nor is that subdivision to be regarded as inconsistent with the terms of subdivision 2 thereof relative to the rescission of a contract through the fault of the other party, when "the consideration for his obligation fails in whole or in part," save that subdivision 4 is strictly limited to executory contracts, as to which any partial failure of consideration must be "in a material respect."

Id.—Materiality of Improvements—Support of Verdict—Conflicting Evidence.—Where the evidence was conflicting as to whether the improvements which were burned formed a material portion of the consideration which was to be rendered by the defendant, and as to their value, and there was evidence tending to sustain the verdict of the jury that the improvements and their value constituted a material consideration for the execution by the plaintiff of the contract of sale, the verdict is sufficiently supported, and the conflicting evidence will not be reviewed.

Id.—Executory Contract of Purchase—Loss of Improvements in Vendor's Possession Falling upon Vendor.—Whatever may be the rule in other states as to the loss for improvements falling upon the purchaser under an executory contract, as the equitable owner, the rule is settled in this state that when the vendor is in possession under an unperformed executory contract of purchase, the loss of improvements by fire falls upon the vendor.

Id.—Effect of Loss of Improvements upon Vendor and Purchaser. —In case of loss of improvements by fire while in the possession of the vendor, the vendor is excused from further performance of the contract; but he can neither retain purchase money paid nor enforce the collection of money remaining unpaid, and the purchaser may rescind the contract and recover back money paid or deposited thereunder.

Evidence — Former Condition of Burned Building — Value.— Insurance Collected.—Evidence was admissible to show the former condition of the main building destroyed by fire, that it could carry machinery requiring fifteen horse-power for its operation as a factory and that it was in good condition. Its condition may be shown by one who knows nothing of values. Its value may be shown by expert evidence; and it may be shown that after its loss by fire defendant

collected thirteen thousand dollars' insurance thereon, because this
evidence contradicted his statement of its value.

ID.—MOTIVE OF PURCHASER IN RESCINDING—IMMATERIAL EVIDENCE.—If
the purchaser had the right to rescind the contract of sale, his motive
in rescinding it was immaterial; and the court properly excluded
evidence bearing upon the question of his motive.

ID.—ABSENCE OF ERROR IN RULINGS.—It is held that no error appears in
the rulings of the court upon evidence or as to instructions given or
refused.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from orders denying
a motion to set aside the verdict, and denying a new trial.
John Hunt, Judge.

The facts are stated in the opinion of the court.

Robert H. Countryman, for Appellant.

Frohman & Jacobs, for Respondent.

MELVIN, J.—Defendant appeals from a judgment against
him, from the order denying his motion to set aside the verdict
before entry of judgment and from an order denying his
motion for a new trial.

The action was one for the recovery of ten thousand dollars
paid as a deposit on account of a contract of sale of real prop-
erty situate in the city and County of San Francisco. Plain-
tiff negotiated with Sage, Dealey & Co., a corporation, which
was defendant's agent, for the purchase of a piece of land
and the improvements thereon located on Hayes Street near
Van Ness Avenue. On April 16, 1906, a written contract was
signed by the proper officers of the said corporation. This
writing acknowledged the receipt from James Conlin of ten
thousand dollars to secure the sale to him of the real property
and improvements in question for one hundred and ten thou-
sand dollars. The sale was made subject to the owner's ap-
proval and the seller was to pay his proportion of the taxes
accruing from June 30, 1905, up to the date of the "close
of sale." Thirty-five days from the date of acceptance by
the seller were allowed for search of title and if title was
not found good the vendor was to have ninety days in which
to remove any defects, but failing in that was to return the

deposit immediately. The writing also provided that if the title was found good and the sale not closed in accordance with the terms of the agreement the deposit was to be forfeited as fixed and settled damages. The contract as set forth in this receipt was accepted on the day of its date by James Conlin who in writing bound himself to buy the property at the price and upon the terms named. It was alleged in the complaint that on April 16, 1906, there stood on the property improvements consisting of several buildings which "were of great value as and constituted a material part of the consideration for defendant's entering into said agreement and a material inducement to him to enter into said agreement to purchase said property." It was also alleged and proved that on April 17, 1906, an abstract of title belonging to defendant was delivered to plaintiff for use by him in having the title searched; that on the same day he delivered it to his attorneys; and that on the following day, without fault on his or their part, it was destroyed in the great conflagration, which also swept out of existence the improvements on the real property, the subject of the contract of sale. There is an allegation in the complaint on information and belief that the lien of a mortgage stood against the property at the time of the contract and that it had not been removed before this suit was commenced. There is a further averment that on May 8, 1906, plaintiff rescinded the contract by notice in writing to the defendant and to Sage, Dealey & Co., his agent. These, omitting the purely formal matters, are the essential contents of plaintiff's pleading.

After his demurrer to the complaint had been overruled defendant answered, admitting the existence of a mortgage, but averring an agreement with plaintiff that enough money might be retained by the latter from the purchase price of the property to satisfy said mortgage. There are also allegations that the improvements were of no material value and did not constitute any part of the consideration for 'the execution of the contract of April 16, 1906; and that the action was brought because the real property had decreased in value after April 18, 1906, plaintiff seeking to be excused from a contract upon which he might lose money.

The verdict on general and special issues was in favor of the plaintiff and the judgment entered was for eight thousand

dollars, plaintiff having agreed at the trial to allow two thousand dollars to be applied to the recoupment of defendant for that amount paid by the latter to his agent, Sage, Dealey & Co., for negotiating the sale. The jury found the value of the land alone on the 16th of April, 1906, to have been ninety-seven thousand dollars and that of the improvements thirteen thousand dollars.

Appellant's counsel take the position that his demurrer was good and that his motion to set aside the verdict should have been granted because it is neither averred nor proven that before the attempted rescission plaintiff restored or offered to restore everything received by him under the contract in accordance with subdivision 2 of section 1691 of the Civil Code. He insists that before being in a position to rescind plaintiff should have paid for the destroyed abstract of title and should have offered to defendant the two thousand dollars which the latter had paid as his agent. The answer to this is that the abstract of title was not received "under the contract," and it was not shown by the pleading or otherwise that plaintiff was a party to the payment of the commission or that he knew anything about such payment prior to the serving of his notice of rescission. Neither the abstract nor the commission formed any of the subject-matter of the contract which is set out in full in the complaint. The abstract was doubtless loaned to plaintiff as a matter of convenience to assist his attorneys in an examination of the records and it was no more a part of the consideration or of something received "under the contract" than defendant's carriage would have been if he had loaned it to plaintiff for the latter's convenience in going to inspect the property. If the vehicle had been destroyed by some unavoidable accident during its use by the plaintiff no one would claim that its restoration would have been a prerequisite to a rescission of the contract for the purchase of the realty. Defendant testified that he never told plaintiff prior to the date of rescission what commission he had paid to the corporation that acted as his real estate agent, and as contracts for the sale of property on commission are frequently contingent upon the completion of the transaction there could have been no presumption that any amount had been paid prior to that time.

Appellant's counsel in a long and able discussion ask us to

hold: 1. That the burning of the improvements was not a failure of consideration in "any material respect"; and, 2. That where without fault on the part of the vendor such improvements are destroyed the loss must fall upon the vendee under the theory that he is the equitable owner of the property because equity will presume that to have been done which should have been done. Subdivision 4 of section 1689 of the Civil Code provides, that "a party to a contract may rescind the same . . . if such consideration before it is rendered to him fails in a material respect from any cause." Upon the first point appellant's counsel assert that this section must be construed not as authorizing rescission of a contract because of *partial failure* of consideration, but must be interpreted in such a manner that the words "material respect" be held to refer to something going to the root of the contract—something which is of its essence and the absence of which would destroy for a party wishing to rescind, the whole purpose of the agreement. We do not think that subdivision 4 of the section requires such modification to be implied, nor do we think its literal interpretation makes it inconsistent with subdivision 2 of the same section which provides that a party may rescind "if through the fault of the party from whom he rescinds the consideration for his obligation fails in whole or in part." The effect of subdivision 4 is somewhat broader than subdivision 2 when applied to executory contracts, but the former subdivision might by its terms operate upon a consideration already paid under a partially executed contract if the consideration should fail in whole or in part by the fault of the party through whom rescission is sought. The words "before it is rendered to him" contained in subdivision 4 indicate the difference in the scope of the two subdivisions, the latter being strictly limited to executory contracts. Of course the failure of consideration must be in a "material respect."

We will not follow counsel in his discussion of the evidence in which he seeks to demonstrate that the buildings were old; that the income derived from them was less than the interest on the purchase price would have been if it had been deposited in a savings bank; that not the income, but the speculative value of the realty induced plaintiff to enter into the transaction for its purchase; and that therefore the improvements

formed no material portion of the consideration to be rendered by the defendant. The jury found the value upon conflicting evidence, some of which was sufficient to justify the conclusion reached; and there was also evidence which supported the finding that the improvements constituted a material consideration for the execution by plaintiff of the contract of sale.

Appellant's counsel cites numerous authorities to the proposition that loss due to the destruction of buildings by fire in a case like this falls upon the vendee. Undoubtedly, there is authority in some jurisdictions for such doctrine, most of the cases depending upon *Paine* v. *Meller*, 6 Ves. Jr. 349, Typical American cases upon the matter are *Brewer* v. *Herbert*, 30 Md. 301, [96 Am. Dec. 582], and *Snyder* v. *Murdock*, 51 Mo. 175. In California, however, this rule has not been followed; at least not in recent years. *Smith* v. *Phœnix Ins. Co.*, 91 Cal. 330, [25 Am. St. Rep. 191, 13 L. R. A. 475, 27 Pac. 738], cited by appellant does not support his theory. While it was there stated that a *vendee in possession* of land may sometimes maintain an equitable title to it under his executory contract as against the vendor's legal title, the chief justice delivering the opinion of the court in that case said: "There is a wide distinction between the proposition that the vendee in possession under an executory contract of sale may maintain the possession against the vendor as long as he performs his part of the agreement, and upon full compliance may enforce specific performance of the vendor's contract to convey the legal title, and the proposition here contended for, —viz., that the vendor in such a contract, notwithstanding the destruction of the subject of the contract, in whole or in part, before the date stipulated for payment and conveyance, and his consequent inability to make a conveyance of that for which the vendee has bargained, may nevertheless compel the vendee to pay the whole contract price in exchange for a fraction of the property sold." This language is followed by an analysis of the apparently conflicting decisions on this subject and the adoption of the rule announced in *Wells* v. *Calnan*, 107 Mass. 514, [9 Am. Rep. 65], that the destruction by fire of buildings on property in the vendor's possession prior to the date fixed for the payment of the purchase price and the conveyance of the title, defeats the vendor's right to compel performance on the part of the intending purchaser under

the contract.   This rule has been followed ever since in this state.   In *Potts Drug Co.* v. *Benedict,* 156 Cal. 334, [25 L. R. A. (N. S.) 609, 104 Pac. 423], after a discussion of the rule that where there has been a present, unconditional, fully consummated sale, the risk accompanies the title and any loss falls upon the purchaser, this language was used: "Where there is a mere agreement to sell, and therefore title has not passed, the loss falls on the vendor for the same reason.   In such a case the vendor is excused from the performance of his contract under the rule we have discussed by reason of the destruction of the thing, but he cannot retain money already paid on account of the proposed purchase, or recover moneys remaining unpaid." (Citing *Wells* v. *Calnan,* 107 Mass. 415, [9 Am. Rep. 65]; *Smith* v. *Phœnix Ins. Co.,* 91 Cal. 330, [25 Am. St. Rep. 191, 13 L. R. A. 475, 27 Pac. 738], and *Gould* v. *Murch,* 70 Me. 288, [35 Am. Rep. 325].)   We conclude, therefore, that plaintiff had the right to rescind under subdivision 4 of section 1689 of the Civil Code for failure of consideration in a "material respect," before it was "rendered to him," as the rule in California does not regard the vendee under a contract like the one before us as being the person by whom the destruction of the tenements must be borne.

Mr. Cahn, one of plaintiff's witnesses, was asked with reference to a cottage on the land in question, "How deep was it?" He answered "I think it was about two rooms in depth" and then proceeded to give his opinion that it was of trifling value. The latter part of the answer was properly stricken out as not being responsive to the question and the court correctly struck out an irresponsive answer to a question relating to the plumbing whereby, instead of telling of what said plumbing consisted, witness volunteered the statement that it was of very poor quality.   The court permitted evidence regarding the condition of the factory building which formerly stood on the premises.   Defendant sought to show that it was of a very flimsy character.   Over his objection plaintiff's counsel was permitted to ask a witness "How much power was required to operate the machinery?"   The fact that the building (as shown by the answer to this question) could carry machinery requiring fifteen horse power for its operation was relevant as bearing on the condition of the structure.   Mr. Cahn testified on direct examination that the building was in good condition.

On cross-examination defendant's counsel put this question to him: "None of the improvements on the land were of any material value were they?" Objection that the question called for a conclusion was properly sustained for the reason that Mr. Cahn was not shown to be an expert on values. Whether a building is in good condition or not may properly be a subject of testimony from one who knows nothing of values. There was no error in sustaining objections to the questions propounded to Mr. Cahn on cross-examination by which he was asked to testify whether the cottage was a cheap or an expensive building. He was not an expert on such matters. He was also asked certain questions with reference to the amount of insurance carried in Mr. Osborn's favor by Cahn, Nickelsburg & Co., tenants occupying the property. All of these questions were allowed over defendant's objections. Respondent contends that evidence of the amount of insurance which, as the lease provided, should be carried at the expense of the tenants was pertinent as showing Mr. Osborn's opinion touching the value of his own property; and that the fact of the payment by the tenants of the expenses of insurance and the taxes was in point as showing the income produced by the buildings which were destroyed. We hardly think the inquiry about the insurance was proper on the first theory, but under the pleadings and defendant's contention that the buildings were of trifling value, it was proper to show that the rent paid was net. Perhaps the scope of the investigation of this subject was somewhat too extended, but we do not see how defendant could have been injured by proof of the amount of insurance carried and the premium paid for it. Appellant complains because plaintiff was allowed to testify to the value of the buildings. This was perfectly proper, because plaintiff had qualified as an expert. Mr. Conlin, against objection of defendant's counsel, stated, while on the witness stand, that possession of the property had not been given or offered to him by the defendant. Appellant insists that as the time for search and perfecting of title had not passed, this was improper evidence. The questions relating to possession were proper, however, because possession by a vendee is sometimes evidence that the parties consider the contract substantially completed and plaintiff was seeking to show that there was no basis for any such presumption in this case. Mr. Conlin was

interrogated with reference to his real motive in wishing to withdraw from the contract. If he had a right to rescission his motive was an immaterial matter. (*Crim* v. *Umbsen*, 155 Cal. 702, [132 Am. St. Rep. 127, 103 Pac. 178]; *Boyson* v. *Thorn*, 98 Cal. 578, [21 L. R. A. 233, 33 Pac. 492].) He was also asked on cross-examination if he had ever requested Mr. Osborn to give him the property without the improvements. A general objection to this question was sustained. He had, as we have seen, the right to rescind. It was, therefore, immaterial whether or not he had asked for delivery of the property minus the improvements. Whether or not there had been an offer of possession to him by defendant was at issue in the pleadings and it was proper to interrogate him about that matter, but there was no issue on the subject of any request from him for delivery of the denuded property after the fire. Plaintiff was not allowed to answer the question by the cross-examiner regarding the depreciation of the property after the fire. Objection was sustained on the ground that he was not shown to be an expert on values *after* the fire. We see no error in that ruling. Objection was sustained to a question whether or not certain pieces of property bought since the fire had been purchased for speculative reasons and to be added to plaintiff's holdings. The purpose of this question, according to counsel, was to show that plaintiff had been buying land in that vicinity irrespective of improvements. This only bears on Mr. Conlin's motive in rescinding which, as we have seen, is immaterial. Mr. Osborn testifying in his own behalf had said that he had had a conversation with plaintiff in which the latter declared that he would have to tear down the buildings and put up something from which to get revenue after the expiration of the lease of Cahn, Nickelsburg & Co. Afterwards Mr. Conlin took the stand and denied such statement. Appellant assigns this as error because no impeaching questions had been addressed to the defendant when he was a witness in his own behalf (citing *Fagan* v. *Lentz*, 156 Cal. 689, [20 Ann. Cas. 221, 105 Pac. 951]). Obviously it was proper for Mr. Conlin to deny that he had made the statement attributed to him. It was simply rebuttal. *Fagan* v. *Lentz* has no application to the situation shown here. That was a case where alleged statements of witness showing her hostility to one of the litigants were sought to be introduced in evidence.

As she had not been interrogated about these purported declarations while she was on the stand, no proper foundation for their introduction had been laid. Appellant complains of certain rulings whereby he was prevented from showing that Sage, Dealey & Co. had retained as a commission two thousand dollars out of the ten thousand dollars deposit with that corporation. As we have seen, there was no showing that respondent ever knew of this transaction until during the course of the trial. But appellant insists that Mr. Conlin must have known of it at the time of filing the complaint because he there pleaded the approval of the contract by Mr. Osborn and the written ratification did show an agreement to pay the commission to the agent. The pleading of the ratification does not necessarily show, however, that respondent had actually read this written approval of the contract by defendant. He might have depended upon the fact that Osborn's conduct on the day following the date of the contract indicated his ratification of it. The court correctly admitted evidence tending to show that the improvements on the property were burned before plaintiff had a chance to examine the title. The contract of lease between defendant's grantor and Cahn, Nickelsburg & Co., was correctly admitted in evidence as tending to throw light on the value of the improvements by showing the income which they were producing. Counsel for plaintiff asked Mr. Osborn the following question: "Any insurance that was collected was for your benefit, was it not?" The objection that it called for a conclusion of the witness was overruled and the interrogatory was given an affirmative answer. Here was no error. It was not a mere conclusion on his part that he was the person interested in the policies which had been obtained in Mrs. Shotwell's name. A number of questions were propounded to Mr. Osborn relating to the collection of the insurance money after the fire. By his answers he showed that he had filed proof of loss whereby the value of the improvements was placed at more than thirteen thousand dollars. He presented these proofs of loss and collected the money paid by the company. This evidence was pertinent as an admission contrary to his pleading and testimony that the improvements were practically valueless. Respondent's counsel asked Mr. Osborn what he had paid for the land and after fruitless objections he replied that he had paid over eighty-one thous-

and dollars. This testimony was not proper as showing what his profit would have been if the sale had been consummated, but was admitted correctly to show the improbability of his estimate of the value of the buildings at five hundred dollars, since he allowed them to continue to encumber a piece of property which, as he testified, would be more valuable without them. Objection was sustained to a question by his own counsel whether or not the amount paid Mr. Osborn by Cahn, Nickelsburg & Co., under this lease was greater or less than the usual rate of interest on the investment in property rented, and there was a similar ruling when he was asked regarding increase in the value of the land after he bought it. He had not at that time qualified as an expert on matters of interest or property values. Defendant sought to show that by reason of the non-payment of the purchase price of the land by plaintiff he had been compelled to pay interest on a mortgage. Questions directed to this purpose were rightly disallowed. Plaintiff was not concerned with defendant's relations with third parties, or with his intentions regarding the spending of the money expected from the sale. A Mr. Cohn was called as an expert to prove that the property without improvements was worth one hundred and ten thousand dollars on April 16, 1906. He failed, in the opinion of the court, to qualify as an expert on the value of the property without the improvements, and we see no error in the sustaining of the various objections to questions asked of him. *Defendant* sought to prove by Mr. Buckbee (but was prevented by timely objections from doing so) that the results of the earthquake and fire diminished the value of the property. This, if proven, could only have been relevant as showing Conlin's motive for rescinding and that was immaterial. While Mr. Sullivan, who was connected with Sage, Dealey & Co., was being examined, the following question was asked: "In this matter did you go to Mr. Osborn on behalf of plaintiff, or did Mr. Osborn come to you to sell the property?" Counsel objected on the ground that "the only purpose would be an attempt to prove that the witness was the agent of the plaintiff, while the pleadings themselves allege, and it is not denied, that Sage, Dealey & Co. were the agents of defendant and that they had the contract in evidence signed by the defendant authorizing them to sell." This objection was properly sustained for the reasons given by

counsel.  Mr. Sullivan was asked if defendant had told him that plaintiff might have the insurance money paid for the buildings destroyed by the fire and if defendant had offered through him to get a new tenant for the property who would pay four hundred dollars a month.  The court sustained objections on the ground that plaintiff was not bound by statements made to a third party.  The mere recital of this ruling shows its propriety.  Mr. Buckbee testified that the fire and earthquake destroyed the market value of the property.  This was stricken out as not responsive to the question which was "Do you know what effect, if any, the earthquake and fire of April, 1906, had upon the market value of this property?"  Witness Kern had made for presentation to an insurance company an estimate of the loss occasioned by the burning of the buildings on the property in question.  This estimate showed a deduction for depreciation.  Witness testified that he did not figure the depreciation in any of the statements of loss which he prepared—he thought that was "for the owner or the insurance people to do themselves."  This answer was stricken out and appellant assigns this ruling as error in spite of the fact that on the very next page of the transcript to that on which the court's action on this matter is shown, substantially the same answer appears as having been made without objection.  For the purpose of showing what it would cost to replace the burned structures with a brick building of approximately the same capacity, defendant called Mr. Lamb, an architect, who was asked certain questions with reference to the cost of a building known as the "Silvesta building."  Objections to these questions were properly sustained as plaintiff could not be bound by testimony relating to the cost of a particular building.  Witness was then asked what would be the actual cost of a four story building sixty feet by 120 feet constructed within three or four months of the trial, said building to be within the fire limits.  The court sustained defendant's objection to this question upon the ground that the time fixed was too remote.  The objection as phrased by counsel was: "The plaintiff rescinded the contract on May 8th, and the price within three or four months cannot bind the plaintiff.  This was after suit was brought."  A mere statement of the ruling demonstrates its correctness.

We will not consider in detail appellant's criticisms of the instructions given and the court's refusal to give certain others. The jury was fully and fairly instructed upon all the matters properly involved in the case and no substantial error appears. Appellant calls our attention particularly to the court's refusal to instruct the jury that they must disregard all evidence concerning the lease of the property by Mr. Osborn to Neustadter Brothers, without Mr. Conlin's knowledge, after the fire. Evidence of the existence of such a lease was introduced by appellant, who cannot with good grace complain of the court's refusal to direct the jury to disregard a part of his own case.

No other alleged errors require discussion.

The judgment and orders are affirmed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.