[Civ. No. 1559. Second Appellate District.—June 3, 1915.]

H. E. HIGBIE et al., Respondents, v. E. S. SHIELDS, Appellant.

CONTRACTS—SALES—ACTION FOR PURCHASE PRICE—DESTRUCTION OF PROPERTY—DELIVERY OF POSSESSION—INSUFFICIENCY OF EVIDENCE TO SHOW.—In this action to recover the purchase price of a planing mill which was destroyed by fire on the day the transaction was to be closed, it is held that the uncontradicted evidence established that the contract between the parties was at the time of the burning of the mill purely executory, but possession of the mill had not been taken by the defendant, and that when the fire occurred the loss incurred thereby was one which as between these parties must fall upon the plaintiffs.

APPEAL from a judgment of the Superior Court of San Diego County and from an order denying a new trial. T. L. Lewis, Judge.

The facts are stated in the opinion of the court.

Gordon L. Gray, and Leovy & Leovy, for Appellant.

Glidden & Hotchkiss, for Respondents.

JAMES, J.—Appeal from a judgment in favor of plaintiffs and from an order denying the motion of defendant for a new trial.

This action was brought to recover the sum of six thousand dollars which it is alleged defendant agreed to pay to the plaintiffs as the purchase price of a certain planing mill. The agreement, as shown by the evidence set out in the bill of exceptions used on the motion for a new trial, was that in exchange for the total number of shares of stock in the corporation owner of the mill, which stock was all owned or controlled by the plaintiffs, the defendant was to pay the sum of four thousand dollars and deed over a lot of land in the city of San Diego, estimated in the transaction at the value of two thousand dollars. The cause of action as framed in the complaint is based directly upon the alleged promise of the defendant to pay the sum of six thousand dollars, and in that particular is not in accordance with the agreement as shown by the evidence. The action as defined by the complaint, bears none of the marks, which would indicate that the plaintiffs were seeking to recover damages by reason of a failure of the defendant to perform the terms of the contract which the evidence discloses had been agreed upon between the parties. However, passing this matter of variance between the pleading and the evidence, the vital question is presented as to whether, assuming that the complaint presents issues to which the evidence was responsive, the proof made was sufficient to establish the right of action in favor of the plaintiffs. As we view the evidence, there is presented upon the main issues very little conflict as to the facts. It appears that one Wood had been employed as a solicitor by the plaintiffs at their mill, and also that he used the machinery of the mill for his own purposes in preparing material for builders from whom he obtained orders. In the course of his work he became acquainted with the defendant and solicited and received from defendant orders for mill work and lumber. The plaintiffs desired to sell their mill, which fact Wood was acquainted with, and he enlisted the interest of the defendant in that direction. At Wood's solicitation the defendant on Friday of a certain week called at the mill, and it was orally agreed between the plaintiffs and defendant that upon defendant paying the sum of four thousand dollars at a certain bank in the city of San Diego and deeding to one

of the plaintiffs the lot of land valued at two thousand dollars, that the corporate stock, which was then deposited with the bank as collateral security, would be transferred to the defendant. It was then agreed that the parties would meet on the following Tuesday at the bank and close up the transaction. Meanwhile plaintiffs were to continue work at the mill, as they were engaged in preparing material to fill orders theretofore taken by them. Wood was engaged on some work at the mill also which was being put out by himself personally. Wood and the plaintiffs continued at the mill up to Tuesday morning, but on that day, before the transaction with defendant had been closed at the bank, the mill took fire and was totally destroyed. One of the plaintiffs, together with Wood, visited the office of defendant immediately after the fire to secure a consummation of the deal. The plaintiff who accompanied Wood was not disposed to disclose to the defendant the fact that the mill had burned, but Wood insisted upon so doing and thereupon the information was imparted to Shields, who was in ignorance that the fire had occurred. The theory of the plaintiffs in bringing their action was that possession had been delivered of the mill to the defendant before the fire occurred, and that therefore the loss was his and not theirs. So far as a transfer of the stock of the mill corporation and the delivering of the consideration promised by Shields were concerned, the contract of course must be viewed as having been purely executory at the time the fire occurred. This situation is appreciated by respondents, who insist, however, that they delivered the mill, which was the real corporeal consideration to be rendered by them to Shields, by turning the same over to Wood, the defendant's agent. In our view the evidence is wholly insufficient to justify the conclusion as impliedly made by the trial judge, that Wood was authorized by defendant to accept delivery of the mill on the latter's behalf. We find no testimony at all showing any words of direction to Wood from Shields to take possession of the mill for him. Wood in his testimony in relating a conversation with Shields had on Saturday morning preceding the Tuesday when the mill was destroyed, referring to his alleged employment and as to taking possession of the mill, said: "I told Mr. Shields that Mr. Higbie informed me they were going to make the trade on Tuesday morning and asked him if he wanted me to run the

mill for him.   He said yes, that is what he had calculated on.
I asked him about how he was to pay for it, whether a com-
mission or day's work.   He didn't decide entirely about that,
he said he had been thinking it over and so much of the work
would be his own work perhaps it would be more confusing
to have it on a commission basis. . . . I said we ought to start
Tuesday morning.   He said yes, he guessed it was all right.
He said he would come over as soon as he could get around
to it and look things over and we would go down to the bank,
all of us, and make the transfer.   Q. He stated then that he
would be down to the mill Tuesday   A. Yes, sir, as soon as
he could get around from attending to his contract work."
Other statements shown to have been made by Wood indicate
that there was no understanding that possession of the mill
should be delivered to Shields until after Shields had exam-
ined the property again on Tuesday and the transaction had
been closed at the bank by the delivery of the stock certifi-
cates.   Wood was asked the direct question: "Q. Did Mr.
Shields authorize you to take possession of the mill for him
on Tuesday?   A. No, sir, I don't think he did positively.
Q. Did he know that you ordered the oil and lumber which
you have spoken of?   A. Not until afterwards, no, sir.   Q.
Did he in any way authorize or direct you to order any oil,
lumber or other material for the mill prior to his . coming
down there on Tuesday morning?   A. No, sir."   H. E. Hig-
bie, one of the plaintiffs, testified as follows: "After talking
at length, probably half an hour or more, I says, 'Tomorrow is
Saturday.   Usually Saturday afternoons we do not run unless
we are crowded.'   And I says, 'Monday is a legal holiday.'
'Now,' I says, 'you will have the deed to get out and you can
take possession of the mill Tuesday morning.   We will get
out all the stuff we can; we will run tomorrow afternoon and
Monday and get out all our material and fill contracts as far as
we can, and turn the mill over to you Tuesday morning.'   And
he said, 'All right,' . . . and I· says, 'We will meet at the
bank at 10 o'clock when the bank opens, you pay over the
money, and we deliver you the stock, and you take possession
Tuesday morning.'   He says, 'All right,' and left.   That was
the last I saw of Mr. Shields until Tuesday morning after the
fire, when Mr. Wood and I went down and met him in his
office."   This testimony of Higbie is entirely consistent with
the declaration of defendant, and in fact with the testimony

of Wood, that possession of the mill was not to be given over until the transaction involving the delivery of the certificates of stock and the payment of money at the bank had been closed. Not only does it appear that Wood was without authority to take possession of the mill on behalf of the defendant, but the further fact appears that all of Wood's activities in and about the mill from Friday until the time of the fire on Tuesday were of the same character as they had theretofore been, to wit: in pursuance of his employment as solicitor and also in attending to mill orders on his own behalf. In a part of his testimony, which was not disputed, he said he made use of the mill machinery in getting out his own work and was to pay the plaintiffs for the use of their machines. Wood was interested in disposing of the plant to the extent at least of an expected commission from the Higbies; throughout the whole transaction and the negatiotions for the sale of the mill, his relations were colored more with the character of an agent for the Higbies than for this defendant.

It is also suggested on behalf of appellant that the contract sued upon was one which, under the statute of frauds, to be valid should have been expressed by a writing, but it is unnecessary to consider the argument in support of that proposition because of the view we have taken as to the condition of the evidence in its application to the material issues necessary to a recovery by the plaintiffs. In our opinion, the uncontradicted evidence established that the contract between the parties hereto was at the time of the burning of the mill purely executory, that possession of the mill had not been taken by the defendant, and that when the fire occurred the loss incurred thereby was one which as between these parties must fall upon the plaintiffs.

The judgment and order are reversed.

Conrey, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 2, 1915.