[S. F. No. 14780. In Bank.—July 25, 1933.]

E. E. KELLY et al., Respondents, v. ESTHER SMITH et al., Appellants.

ESTHER SMITH, Appellant, v. E. E. KELLY et al., Respondents.

Thomas Butler for Appellants.

Louis B. De Avila for Respondents.

THOMPSON, J.—On January 6, 1927, the respondents Kelly and wife agreed to sell to the appellant certain real property located in Watsonville, together with the improvements thereon for the sum of $24,000, payable $5,500 cash, $600 on April 6, 1927, and $600 every six months thereafter until the whole was paid, together with interest on deferred payments at the rate of six per cent per annum, interest payable quarterly. The written instrument evidencing the contract of the parties required appellant to provide fire insurance, and in the exact language thereof said she would "cause the improvements on said premises to be insured against loss by fire, in the sum of $4000.00, loss if any payable to the parties hereto as their interests may appear, and pay all premiums to become due on account of said insurance. In the event that said second party shall fail to effect said insurance as hereinabove provided, first [party] may purchase said insurance and charge the cost thereof to the said second party. The premiums on said

insurance to be added to the next installment of principal or interest to become due on account of this agreement, and be paid therewith.'' The appellant entered into possession of the premises under the agreement. On October 6, 1929, she made default in the payment of the installment of principal and interest due on that date amounting to $841.50. On December 6, 1929, a fire destroyed one of the buildings, which was insured for the sum of $2,000, the policy being made payable, in case of loss, to appellant and respondents and the Bank of Italy Savings and Trust Association, as their interests might appear. The banking concern had loaned some money on the property, the note therefor having been signed by both the Kelleys and Mrs. Smith.

In order to clarify the situation with respect to the proceeds of the policy, it is necessary to recite that appellant was leasing from respondents other and different property for hotel purposes, and according to the claim of respondents was in default in her payments of rental therefor. Regardless of the merits of that contention, which was not tried in either of the present cases, the respondents caused an attachment to be levied upon the interests of appellant in the proceeds of the policy amounting to the sum of $1300, that being the amount at which the loss by fire was adjusted.

During the latter part of January or the early portion of February the fire chief of Watsonville notified Mr. Kelly, one of the respondents, that the burned improvements constituted a fire hazard and that the building would have to be razed and the debris removed. Kelly replied that the matter should be referred to Mrs. Smith, as she was the owner of the property. Consequently on February 17, 1930, the fire chief sent a similar notice to her, inclosing a copy to Kelly. Thereafter in a conference between them, Mrs. Smith informed Kelly that a Mr. Whitsett had a man named Manning who would do the work for the lumber he could salvage. Mr. Whitsett had been representing Mrs. Smith as a real estate agent. Mr. Kelly instructed his representative, a Mr. Taylor, to contact Mr. Whitsett for the purpose of having the buildings razed by Mr. Manning. This was done and during the early part of March, 1930, the partially destroyed building was torn down and the debris removed. On February 16, 1930, Mrs. Smith being still in

default and having also failed to pay the installment of interest due on January 6, 1930, the respondent Kelly served a notice on her requiring her to fulfill all the covenants of the contract and to pay the delinquencies mentioned, together with certain unpaid taxes on or before April 16, 1930, or in the event of her failure so to do he would forthwith forfeit and cancel the contract and all her rights thereunder. Appellant made no payment and on April 18, 1930, respondents Kelly commenced the first action involved herein to quiet title to the property. The appellant Smith answered, denying that her claim was without right and alleging the contract and by way of cross-complaint she alleged that there had been a complete failure of consideration for three reasons, as follows: (1) The failure of respondents to either repair the building or credit her with the proceeds of the fire insurance; (2) the tearing down of the improvements without her consent and (3) the disposal of the materials realized from razing the buildings without her consent, and sought recovery of the sum of $12,500 which she said she had paid on account of the contract. The second action was commenced by Mrs. Smith, alleging that the buildings were torn down without her consent, and the rentals she had been receiving thereby caused to cease, and that the consideration for the contract had entirely failed, and praying for judgment in the sum of $12,011.85.

The actions were consolidated and judgment entered for plaintiffs in the quiet title action and against defendant upon her cross-complaint, and another judgment denying any recovery to the appellant, the plaintiff in the second cause of action. Two appeals are prosecuted from the judgments so entered.

In brief, the court found that appellant had made default in the payment of installments under the contract, and had thereby forfeited all right to the property and to the moneys theretofore paid on account of the contract, and, in substance, that the default had occurred October 6, 1929. Also it was found that respondents had not entered upon the property and razed the buildings without appellant's consent, but that the entry and work of destruction and removal of the debris was expressly consented to, authorized and directed by Mrs. Smith. It was further found that appellant had elected to and had affirmed the contract by

filing, on April 11, 1930, an action based on her ownership and possession of the real property (the subject of the contract) to recover from the respondents here and the city of Watsonville damages aggregating $30,250, for alleged trespass upon the property and the razing of the buildings, which said action, at the time of the trial herein involved, was still pending in so far as the respondents were concerned. There is also a finding that the destroyed buildings formed no material inducement to Mrs. Smith, for the execution of the agreement, but that said improvements were old and of no value whatsoever.

The appellant contends that she was not in default under the contract because strict compliance therewith had been waived by respondents by the acceptance previously of late payments, and that the notice to perform was not sufficient to require prompt payment by her, and that the partial destruction of the building, followed by its demolition, constituted a failure of consideration.

■ The evidence does not disclose a waiver by the respondents of the terms of the contract. ■ But we cannot agree that the default which is found to have occurred on October 6, 1929, worked a forfeiture of her rights under the contract. The exact language of the agreement in this particular is as follows: ''It is further understood and agreed that should the said second party fail to make any payment at the time and in the manner hereinbefore agreed, or fail to perform any covenant and condition on her part to be paid, kept and performed, then the said parties of the first part may terminate all the rights of second party under this agreement by notice personally served on the said second party, or mailed to her by registered mail addressed to her at Watsonville, California, and may re-enter upon said premises and remove all persons therefrom.'' Under this stipulation of the parties a notice of forfeiture was required which was not given until February 16, 1930, demanding performance on or before April 16, 1930. We entertain no doubt that the notice was sufficient to accomplish the desired purpose upon the expiration of the date specified. But it must also follow that there was no forfeiture or any attempted forfeiture prior to the expiration of the time designated. Hence, we are compelled to inquire into the effect of the fire upon the contract of the parties. We may ignore

the effect, if any, of the subsequent demolition of the buildings, because upon substantial testimony the court found that Mrs. Smith had consented thereto. We cannot, in like manner, accept the finding of the court that the buildings were old and of no value whatsoever and formed no material inducement to Mrs. Smith to enter into the contract. True, it is, according to the testimony, that the buildings were very old. Likewise, Mr. Kelly gave it as his opinion, while testifying, that the property was just as valuable, if not more so, with the buildings destroyed as with them standing. Yet the fact remains that Mrs. Smith had been receiving $100 a month rental therefrom and the insurance company adjusted the loss at $1300. It is obvious, therefore, that they were valuable as income producers and also had considerable intrinsic worth. ■ We are therefore faced with the question of whether under all the circumstances of the case the loss of the property by fire should fall upon the vendor so as to enable the vendee to rescind or at least to be entitled to a credit upon the payments due upon her contract. Had the legal title to the premises been conveyed to appellant at the time of the contract and respondents accepted back a mortgage or deed of trust for the balance of the purchase price there would be no question. It would readily be admitted that the loss should fall upon the holder of the legal title. Nor can it be gainsaid that the reservation of title in this particular case was designed to serve the same economic purpose as a mortgage or deed of trust. There is therefore strong reason, as was recently indicated in the case of *Bank of Italy* v. *Bentley,* 217 Cal. 644 [20 Pac. (2d) 940, 945], why the law applicable to the rights, duties and responsibilities of the parties should be the same, rather than being made to depend upon ''the more or less accidental form of the security''. Further, it is to be remembered that the parties to the contract contemplated the possibility of the destruction of the buildings by fire, and in order to safeguard themselves against such contingency included a provision in the contract that the vendee should cause the buildings to be insured against fire and pay the premiums therefor. In other words, the vendor by such requirement indicated a plain intent, accepted by the vendee, that he was not expected to bear the loss. In view of these facts we should have no difficulty in arriving at a

conclusion which would be in harmony with most of the jurisdictions of the country, were this a case of unquestioned first impression. However, there are authorities in our own state that must be critically examined. We may summarily dismiss the case of *Smith* v. *Phoenix Ins. Co.*, 91 Cal. 323 [27 Pac. 738, 25 Am. St. Rep. 191, 13 L. R. A. 475], by calling attention to the fact that the question there involved was whether a lease of a building for hotel purposes for a term of five years at a fixed rental and an option to purchase at the end of the term with possession in the lessee, constituted such a change of title as to avoid an insurance policy made payable to the owner—where at the time the insurance was written the insurance company had knowledge that the building was being erected with the intent of leasing it for hotel or rooming-house purposes. The court answered the question in the negative, but it is interesting to note from a reading of the case that the opinion was rendered upon rehearing and that the first conclusion was to the contrary. We note the case and the real question involved therein at this juncture because of the reference to it in subsequent authorities. Perhaps we ought also to observe that the District Court of Appeal, in *Finkbohner* v. *Glens Falls Ins. Co.*, 6 Cal. App. 379 [92 Pac. 318], viewed the Phoenix case in the same light as we have just indicated, taking occasion to quote therefrom as follows: "For the purpose of this decision, it is sufficient to say that no case has been cited, and we have discovered none, in which the vendee has been held bound to pay the purchase price where a valuable part of the property has been destroyed before the day fixed for payment and conveyance, *unless he has taken possession under the contract of sale* or has the right to such possession under the contract before the occurrence of the loss."

Next we refer to *Conlin* v. *Osborn*, 161 Cal. 659 [120 Pac. 755, 760], in which case the contract was not consummated nor had a change of possession occurred, but the vendee had borrowed from the vendor an abstract of title for use in having the title searched, and prior to the expiration of the time allowed for that purpose the improvements on the property were burned down in the great conflagration of 1906 in San Francisco. It was held that the loss fell on the seller and that there was a failure of consideration.

The court, however, approved the reception of evidence relating to possession in these words: "The questions relating to possession were proper, however, because possession by a vendee is sometimes evidence that the parties consider the contract substantially completed and plaintiff was seeking to show that there was no basis for any such presumption in this case."

The case of *Potts Drug Co.* v. *Benedict,* 156 Cal. 322 [104 Pac. 432, 25 L. R. A. (N. S.) 609], is entirely beside the question here involved, although general expressions are therein contained which would seem to bear upon the problem. In that case there was an assignment of a leasehold with intent to then and there vest title in the assignee, and although the assignor retained possession for a short period during which the premises were destroyed by fire, it was held that the loss fell upon the assignee, he being the owner of the title to the leasehold estate.

*Higbie* v. *Shields,* 27 Cal. App. 536 [150 Pac. 801], is to be classified with *Conlin* v. *Osborn, supra.* The contract was wholly executory and possession had not been delivered. The loss was held to fall upon the vendor, the court basing its opinion almost exclusively upon the fact that possession had not changed.

In *Wong Ah Sure* v. *Ty Fook,* 37 Cal. App. 465 [174 Pac. 64], the vendee under a contract which called for payments subsequent to the initial one, was held to be entitled to recover the value of reconstructing a burned building, but in that case the court found an agreement on the part of the vendor immediately following the fire that if the vendee would rebuild he would be allowed by the vendor the cost of reconstruction. A like special agreement was involved in *LeChance* v. *Brown,* 41 Cal. App. 500 [183 Pac. 216].

In *Kirtley* v. *Perham,* 176 Cal. 333 [168 Pac. 351], personal property was sold, but title reserved until the total purchase price was paid. Upon the authority of many of the cases already examined it was held that the loss fell upon the seller, although the court quoted from Mr. Williston's treatise on Sales to the effect that the majority rule is contrary, upon the theory that the rule in this jurisdiction was established. The case, however, is no longer of any authority for the reason that the rule was changed by legislative enactment in 1931. Section 1742 of the Civil Code now

reads in part as follows: "Unless otherwise agreed, the goods remain at the seller's risk until the property therein is transferred to the buyer, but when the property therein is transferred to the buyer the goods are at the buyer's risk whether delivery has been made or not, except that: (a) when delivery of the goods has been made to the buyer, or to a bailee for the buyer, in pursuance of the contract and the property in the goods has been retained by the seller merely to secure performance by the buyer of his obligations under the contract, the goods are at the buyer's risk from the time of such delivery." It will be observed that this legislative enactment is in keeping with the extensive use of the so-called conditional sales contract and the great expansion of credit which has accompanied it. The same reasons which prompt the application of the majority rule respecting risk of loss in California to personal property ought to be given consideration when considering the loss of improvements to real property. Besides bearing in mind the great development of trade through the medium of such contracts with reservations of title as security we ought to consider upon whose shoulders devolves the responsibility of so caring for the property that fire will not occur, and how improper care will contribute to the hazard thereof.

The observations just indulged bring us to a consideration of the case of *Cooper* v. *Huntington,* 178 Cal. 160 [172 Pac. 591], in which case the Coopers (a mother and son) purchased from defendants ten acres of land of which four were washed away by a flood. The case originally grew out of misrepresentations respecting the available water supply for the property. After the filing of the complaint for fraud the parties arranged for a settlement and a check was given by plaintiffs, but payment thereon was stopped because the flood came and washed away the soil from the four acres. And in order to minutely observe the distinction drawn by the court we quote the following sentence: "We are of the opinion that before partial consummation of this contract by a payment of any of the purchase price under it, the Coopers were in a position to withdraw from it." This language was followed later on in the opinion by saying that the statements in *Conlin* v. *Osborn, supra:* " . . . [D]id not amount to a decision that under no contract may there be a failure of consideration of which a

vendee in possession may avail himself." Whatever comfort appellant might otherwise find in the case just discussed is largely dissipated by that of *McCarty* v. *Wilson,* 184 Cal. 194 [193 Pac. 578], also involving erosion. It is there said: "Defendant finally insists that he is excused from performance by the circumstance that the property suffered a ten per cent depreciation in value by reason of a flood between the time of the confirmation of the sale and the date of the commencement of the action. Bearing in mind that prior to the injury to the property defendant was in equity the owner of the land; that he was unquestionably entitled to the possession of the land under the contract with the estate, and that he had actually gone upon the land with men and teams and done about one thousand seven hundred dollars worth of grading, we have no doubt that the risk of loss was upon 'him." In denying a petition for rehearing it was said the fact that the entire purchase price became due upon the confirmation of the sale distinguished it from cases relied upon by petitioner. We have already discovered, however, from the analysis of all the prior cases it was not out of harmony with them.

We now come to the case which is most nearly in point, that of *Lubarsky* v. *Chavis,* 99 Cal. App. 610 [279 Pac. 205]. There a complaint in two counts, its first framed on fraudulent representations for rescission, and the second alleging failure of consideration arising by reason of the destruction by fire of a house on the property and asking that the agreement be rescinded, was filed. A demurrer was sustained and upon plaintiff's refusal to amend, judgment was entered for defendant. On appeal it was reversed, the court saying that the first count was sufficient and also deciding, solely upon the authorities heretofore discussed, that the loss fell upon the vendor, even where the possession was in the vendee. The case cannot be considered as authoritative upon the point here for the reason that the conclusion is founded upon the following language used in referring to *Conlin* v. *Osborn, supra:* "The vendor had not yet delivered possession but that fact has not been considered as a distinguishing circumstance in California. The case has been followed where the vendee was in possession and where title had not passed." We have already ascertained that the reason cited for the conclusion does not in fact

exist. We also direct attention to an article by Professor Cockerill in 1 Southern California Law Review, 309–321, where many of the cases heretofore mentioned are reviewed, and it is pointed out that they do not in fact depart from the doctrine, the conclusion of the writer being stated as follows: ''No criticism is intended to be made of the decisions in the cases discussed. They are, it is believed, correctly decided on their respective facts. The suggestion made is only that, disregarding the loss, the vendor was not entitled in any of them to a decree for specific performance. If this distinction be admitted the doctrine of equitable conversion was in no way involved.''

The discussion of the prior decisions should not be closed without a reference to *Owen* v. *Pomona Land & Water Co.,* 131 Cal. 530 [63 Pac. 850, 856, 64 Pac. 253], which case involved the sale of land and water stock, with possession in the vendee during the completion of the contract. The water supply failed and the purchaser sought to rescind on the ground of failure of consideration as well as for other reasons. With respect to the contention regarding the water this court said: ''Whether or not in the final adjustment of this controversy it may be held that the plaintiff can claim or recoup damages for any actual failure of the supply of water which his stock purported to represent—a point as to which we express no opinion—it is certain that the failure which occurred was not a cause for rescission. *If this part of the consideration for plaintiff's obligation failed in any degree, the failure was due to no fault of the defendant, and so was not a ground of rescission.''* (Italics ours.)

There can be no doubt about the rule generally. In a note to *Sewell* v. *Underhill,* 197 N. Y. 168 [90 N. E. 430, 124 Am. St. Rep. 863, 18 Ann. Cas. 795, 27 L. R. A. (N. S.) 233], will be found a citation of numerous authorities to the proposition that the loss falls upon the vendee in those cases where in equity the vendee becomes the owner of the property. Reference may also be made to *Good* v. *Jarrard,* 93 S. C. 229 [76 S. E. 698, 43 L. R. A. (N. S.) 383], and note thereto, 76 S. E. 698. See, also, article by Professor Vanneman, 8 Minnesota Law Review, 127. Some differences of opinion will be found to exist with respect to those cases where the vendee is not in possession, but where the vendee is in possession, enjoying the entire beneficial use of the

property, having acquired an estate which he may convey or encumber, and which to all intents and purposes is his, the great majority of opinion holds that the loss should fall upon him, such being the manifest intent of the parties where title is retained solely as security. And in view of the insurance provision in this case it should be particularly true. And this result is arrived at not by the legerdemain involved in the doctrine of equitable conversion so much as it is by the contract and the manifest purpose of the parties. By which we conclude that appellant was not entitled to rescind, by reason of the partial destruction of the premises by fire. This conclusion renders further discussion unnecessary.

Judgments affirmed.

Seawell, J., Shenk, J., Curtis, J., Preston, J., Waste, C. J., and Spence, J., *pro tem.*, concurred.