[L. A. No. 14681. In Bank.—October 29, 1936.]

JAMES G. WARE, Respondent, v. SECURITY–FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Association), Appellant.

Walter H. Hewicker for Appellant.

Coleman E. Stewart for Respondent.

SEAWELL, J.—The trial court rendered judgment that plaintiff recover from defendant The Frank Meline Company, Inc., and defendant Security-First National Bank of Los Angeles the sum of $955.75, with interest, paid by him upon an instalment conditional sales contract for the purchase of a lot in Ventura County for the sum of $790, on the ground that plaintiff was entitled to rescind for failure of consideration. Said failure of consideration was alleged to have resulted from encroachments of the Pacific Ocean in 1931, and was caused by exceptionally severe windstorms or such other phenomena of the sea as have occurred with some frequency along the southwesterly ocean shore of the state during the past few years. Defendant Security-First National Bank of Los Angeles is the successor in interest of the Pacific Southwest Trust and Savings Bank, which as vendor entered into said contract with plaintiff. The District Court of Appeal, Third Appellate District, reversed the judgment against defendant The Frank Meline Company, Inc., which had acted as sales agent in negotiating the contract, but affirmed the judgment against defendant bank. (*Ware* v. *Frank Meline Co., Inc.,* (Cal. App.) [53 Pac. (2d) 1033].) Thereafter we granted the bank's petition for hearing.

The lot which plaintiff contracted to buy, No. 866, consists entirely of sand, and it is part of a larger body of a sandy area which is bounded on the west by the Pacific Ocean. It is designated as Pierpont Bay tract on the official map on file in the county recorder's office. Said lot 866 adjoins lot 867 easterly, and fronts on Ormond Court. Lot 867 corners on Shore Drive and Ormond Court. It

will be seen that plaintiff's lot, 866, is not contiguous to Shore Drive. Westerly from Shore Drive is a single row of lots which fronts easterly on Shore Drive and faces the ocean shore on the west. To the west of this row of lots the line of mean high tide of the Pacific Ocean is delineated on said map. Plaintiff's lot is thus separated from the mean high tide line as marked on said map by lot 867, by Shore. Drive, and by lots 88 and 89 (west of Shore Drive), a distance of approximately 137½ feet, and, in addition, by the distance between the westerly boundary of lots 88 and 89 and the line of mean high tide as marked on said map. This distance between the westerly line of lots 88 and 89 and the mean high tide line is not definitely ascertainable, as that distance is not drawn according to scale.

On January 25, 1926, plaintiff contracted to buy lot 866. He viewed the lot a few days thereafter, and again after the streets had been paved in 1927. In September, 1931, he made the final payment upon the contract. He did not see the lot after the storm of 1931 until more than a month after making the final payment. After payment in full, but before receiving a deed, he observed the conditions upon which he relies as grounds of rescission. When a deed was tendered to him he refused to accept it. The court below decreed rescission, based on the following finding: "That the improvements provided for in the sales contract of January 25, 1926, between plaintiff and the defendant . . . were installed during the year 1927, and that during the months of January and February, 1931, the Pacific Ocean encroached upon and destroyed Shore Drive, the ornamental street lighting, the facilities for water, gas, and electricity appurtenant on said real property, and also encroached upon said real property, causing it to be covered with sand and debris; that this destruction was not known to plaintiff until the 15th day of October, 1931. . . . "

The only provision with regard to installation of improvements by the seller is not contained in the conditional sales contract, but in the deposit receipt executed prior to said contract. Said provision is as follows: "Improvements in the above tract include Water, Gas, Electricity, Ornamental Street Lights, Paving Seward Avenue, Pierpont Boulevard, and all lanes and walks in Courts." No provision is made for the paving of Shore Drive, but plaintiff contends that

608

because Shore Drive is delineated as a street upon the sub-division map prepared by The Frank Meline Company, Inc., as sales agent, and used by it in the sale of the lots, the seller bank was under a duty to pave said Shore Drive in like manner with the other streets in the tract. The seller, it seems, did in fact improve Shore Drive in a manner not described, together with other streets in the tract, in 1927. The severe and unusual storms of January and February, 1931, washed out Shore Drive and left it covered with sand. The storm did not wash out Ormond Court or other streets in the tract. As noted above, plaintiff's lot was not located on Shore Drive, but on Ormond Court. The washing out of said drive did not leave plaintiff's lot without convenient means of ingress and egress by Ormond Court.

■ The court's finding that the storm destroyed the ornamental street lighting and facilities for water, gas and electricity appurtenant to plaintiff's lot is not supported by the evidence. The ornamental lighting on Shore Drive was washed out, but there is no showing that the lights on Ormond Court or any other street in the tract were destroyed or seriously damaged. There was testimony on behalf of defendants that the improvements on Ormond Court remained. ■ It was not shown by plaintiff that lots on Ormond Court were to be supplied with water, gas and electricity from Shore Drive. The burden was on plaintiff to establish the alleged failure of consideration. The record is silent as to the location of facilities for supplying water, gas and electricity to lots on Ormond Court. In plaintiff's briefs on appeal it is suggested that the services in question were to be supplied from Shore Drive. But defendant bank in its brief states unequivocally that the mains for supplying gas, electricity and water to plaintiff's lot on Ormond Court were on Pierpont Boulevard, which was on the easterly side of the tract, farthest from the ocean. Plaintiff cannot supply a failure of evidence on this point, upon which he had the burden of proof, by unsupported statements in his briefs on appeal.

■ The court further found that the ocean encroached upon plaintiff's lot, "causing it to be covered with sand and debris". It is admitted that the waters of the ocean during the period of extremely severe storms in January and February, 1931, washed over plaintiff's lot and receded. The

fact that after the storm it was "covered with sand and debris" scarcely affords ground for rescission. Plaintiff testified that when he purchased the lot it was the usual sandy beach lot "with perhaps a little sage or some green stuff growing on it".

There was testimony that bulkheads placed along the shore opposite the tract had been washed out in the storms of 1931. Plaintiff contracted to buy the lot in 1926. There is no claim that during the years before 1931 the waters of the ocean at any time washed over or endangered Shore Drive or plaintiff's lot. Nor is there any showing that the waters of the ocean have washed over plaintiff's lot at any time since 1931. The testimony of Anthony J. Oliver, a witness for defendants, indicates that since 1931 new bulkheads and a groin have been built. There is no showing that these barriers are likely to prove insufficient to protect plaintiff's lot from future storms.

Plaintiff viewed lot 866 a few days after he contracted to buy it in 1926 and observed its proximity to the ocean. Thereafter he continued to make payments on the purchase price for more than five years. No contention is made that defendant bank, its predecessor in interest, or the selling agent, The Frank Meline Company, Inc., made any false representations whatever with reference to the lot. We conclude that plaintiff failed to prove a substantial failure of consideration entitling him to rescind. Plaintiff's lot was not contiguous to Shore Drive, and the vendor had not agreed to improve said drive. The washing out of Shore Drive does not afford plaintiff grounds for rescission.

Furthermore, in the circumstances shown, the lot was at the risk of plaintiff in so far as damage from the ocean was concerned. In *Smith* v. *Kelly*, 218 Cal. 543 [24 Pac. (2d) 471], this court had occasion to consider the question as to who bears the loss under an executory contract for the sale of real property in the event of damage or destruction without fault of either party. The loss in that case was due to fire. We held that where the vendee is in possession and the contract provides that the vendee shall cause the property to be insured against fire, the vendee is not entitled to rescind for failure of consideration upon the

destruction of the building by fire. The fact that the vendee was entitled to possession, and in that case was in possession, coupled with the insurance provision of the contract, indicated an intent of the parties that the vendor retained title for security only, and that the loss should be on the vendee. In the instant case the contract gave the vendee the right of possession. It also required the vendee to insure any buildings placed on the property to their full insurable value. The land was not in fact improved by the vendee, and hence continued to be unoccupied, and there were no buildings to be insured. And the force which it is claimed has done damage is not fire, but the sea. Nevertheless, the provisions in the contract with regard to possession and insurance indicate, as they did in *Smith* v. *Kelly, supra,* an intent that the vendor should retain title for security only, and that subsequent to execution of the contract the property should be at the risk of the vendee as to any losses occurring without fault of either party. (See, also, *Ross* v. *McDougal,* 12 Cal. App. (2d) 172 [55 Pac. (2d) 574].)

The transcript is very short and the situation may be thus summarized from facts substantially stated by plaintiff. He entered into the contract of purchase in January, 1926, and viewed the premises some five or ten days thereafter. He visited the property several times both before and after the improvements were put in. The only improvements mentioned at all are a pier, bath house and various streets. None of said improvements are described. He did not recollect the dates of his visits, as he said he was not "terribly interested". He did not visit said locality after the storm until eight months thereafter. He had made his final payment more than a month before said visit. On this visit he observed that the southern end of Shore Drive was completely "washed out", and a heavy barricade was erected across the drive. Some of the lighting fixtures were apparently misplaced. Some references are made by plaintiff that Shore Drive was "washed out". It may be inferred that prior to the storm said drive had been put into a passable condition for vehicles. In its state of nature it was deep sand. Whether said drive was paved with some kind of paving material, or whether it was graveled or

planked does not appear from an examination of the record. Evidently there is no claim that the earth was "washed out", but the material which formed the surface of the way was broken or disturbed in sections by ocean swells during said storms. No serious damage seems to have been done to the earth forming said driveway, nor does it appear that whatever damage was done to the improvement thereon cannot be easily repaired.

Said contract does not specifically bind the defendant in the matter and no demand or request has been made that defendant do anything by way of repairs. Plaintiff's lot, which stands at a higher elevation, was not damaged by this one exceptional marine disturbance. Santa Barbara, the home of plaintiff, is a seaside city, and the location of lot 866 is on the same coast line southerly from Santa Barbara. No doubt plaintiff during his long residence of ten or twelve years has taken notice of the exceptional disturbances which are likely to occur and force water back upon beach lands which have a gradual slope oceanward, as in the instant case. This naturally may be expected. Such disturbances had occurred in the vicinity of his home city and washed out a long section of the state highway. Other similar occurrences must have been within his knowledge, as they are matters of common knowledge. He had, for a period of five years, made visits to and made payments on said property, until he entirely paid the purchase price. Some kind of a breakwater had been erected at some time along a section of the bay. No objection was made to its height or the plan of construction by plaintiff during the above period. After said storm had occurred another bulkhead was constructed and a number of groins were extended into the bay. Defendant or its predecessor at no time obligated itself to combat the fury of the sea. Plaintiff saw the situation and must have known all that any average person could have known as to the caprice of ocean swells and tidal waves, which may occur at unpredictable periods of time. That they do occur is a matter of common knowledge.

We are unable to find any good reason for allowing the plaintiff to rescind his contract at the time when the value of real estate was at its lowest mark, 1931, after having enjoyed the right of possession for approximately five years.

We are unable to see that said lot suffered any damage measured by the contract of sale and purchase.

Judgment reversed.

Thompson, J., Curtis, J., Langdon, J., Waste, C. J., and Shenk, J., concurred.