91 323
|111 413|

</div>

[No. 13514.   In Bank. — September 21, 1891.]

FRANKLIN H. SMITH ET AL., RESPONDENTS, *v.* THE PHŒNIX INSURANCE COMPANY, APPELLANT.

FIRE INSURANCE — CONDITIONS — CHANGE IN TITLE OR POSSESSION — LEASE OF BOARDING-HOUSE — CONTRACT OF PURCHASE. — Where an application for insurance upon an uncompleted building designed for a hotel or boarding-house stated that the building was to be occupied by a tenant for hotel purposes (no particular tenant being named), and the insurers had full knowledge before the issuance of the policy that it was to be so occupied, the taking of possession of the property by a tenant under a lease for a term of years executed after the insurance was effected, and which contained an agreement that the tenant would purchase the property on or before the expiration of the lease, at a specified price, does not constitute a change in the title to or possession of the insured premises sufficient to violate a condition of the policy that it should become void if any such change should take place.

Id. — Consent to Possession of Tenant — Revocation of Policy. — The issuance of the policy under such application was an express consent to possession by any tenant to be selected by the assured, subject to revocation by canceling the policy and returning the premium if an objectionable tenant was selected.

Id. — Vendor and Purchaser — Possession under Agreement to Purchase — Specific Performance — Purchase-money — Destruction of Buildings. — Although a vendee in possession under an executory contract for the sale of land may maintain the possession against the vendor as long as he performs his part of the agreement, and upon full compliance may enforce specific performance of the vendor's contract to convey the legal title, yet the vendor, under such contract, cannot recover the purchase price from the vendee, where valuable buildings have been destroyed by fire before the day fixed for payment and conveyance, unless the vendee has taken possession under the contract as distinguished from possession under a lease, or has the right to such possession before the occurrence of the loss.

Id. — Tenancy of Buildings — Lease with Agreement to Purchase — Termination of Agreement — Risk of Vendor. — A tenant of valuable buildings who enters into the possession thereof under an agreement consisting of a lease for a term of years and an executory contract to purchase at the end of the term, or sooner if desired, will be deemed, for the purpose of determining his liability to the owner of the property in case of a destruction of the buildings prior to the time for payment and conveyance, to have entered and be holding under his lease, and not under the agreement to purchase; and his liability upon that agreement ends with the destruction of the buildings, which are at the sole risk of the vendor until the purchase is made.

Appeal from a judgment of the Superior Court of Los Angeles County.

The facts are stated in the opinion of the court.

*Haggin, Van Ness & Dibble,* for Appellant.

The contract between plaintiff and Stewart operated as a change of title and a consequent vitiation of the policy. (Fry on Specific Performance, 3d ed., p. 633, sec. 635, note 2; *Pelton* v. *Westchester Fire Ins. Co.,* 77 N. Y. 605; *Davidson* v. *Hawkeye Ins. Co.,* 71 Iowa, 532; 60 Am. Rep. 818; *Semmelhaack* v. *Canada F. & M. Ins. Co.,* 4 Montreal L. N. 205; *Germond* v. *Home Ins. Co.,* 2 Hun, 540; *Johannes* v. *Standard Fire Office,* 70 Wis. 196; 5 Am. St. Rep. 159; *Franklin Ins. Co.* v. *Martin,* 8 Ins. Law J. 135; 40 N. J. L. 568; 29 Am. Rep. 271; *Ramsey* v. *Phœnix Ins. Co.,* 2 Fed. Rep. 429; *Imperial Ins. Co.* v. *Dunham,* 117 Pa. St. 460; 2 Am. St. Rep. 686;

*Elliott* v. *Ashland etc. Ins. Co.*, 117 Pa. St. 548; 2 Am. St. Rep. 703; *Laffan* v. *Naglee*, 9 Cal. 663; 70 Am. Dec. 678; *De Rutte* v. *Muldrow*, 16 Cal. 505; *Hall* v. *Center*, 40 Cal. 63; *Dowd* v. *Clarke*, 54 Cal. 48; *Peasley* v. *McFadden*, 68 Cal. 611; *Southern Pacific R. R. Co.* v. *Terry*, 70 Cal. 484; *Monroe* v. *West*, 12 Iowa, 119; 79 Am. Dec. 524; *Dennett* v. *Penobscot Fair G. Co.*, 57 Me. 425; 2 Am. Rep. 58; *Smith* v. *Gage*, 2 Am. Law Reg., N. S., 438; *McKecthine* v. *Sterling*, 48 Barb. 330; *Moore* v. *Burrows*, 34 Barb. 173; *Adams* v. *Green*, 34 Barb. 176; *Richter* v. *Selin*, 8 Serg. & R. 439.) A contract to convey, accompanied by delivery of possession, operates as an equitable transfer of the title. (*Baldwin* v. *Pool*, 74 Ill. 97; *Fitzhugh* v. *Maxwell*, 34 Mich. 138; *Strickland* v. *Kirk*, 51 Miss. 795; *Derr* v. *Dellinger*, 75 N. C. 300.) Plaintiffs could not have sold the reversion until failure upon the part of Stewart to comply with his agreement to purchase. (*Grabenhorst* v. *Nicodemus*, 42 Md. 236; *Kerr* v. *Day*, 14 Pa. St. 112; 53 Am. Dec. 526; *Reed* v. *Lukens*, 44 Pa. St. 200; 84 Am. Dec. 425; *Beall* v. *Davenport*, 48 Ga. 165; 15 Am. Rep. 656; *Land* v. *Carter*, 1 Saw. 212; *King* v. *Ruckman*, 21 N. J. Eq. 599; *Holbrook* v. *Betton*, 5 Fla. 99; *Schuster* v. *La Londe*, 57 Tex. 28.) The title held by Stewart under the agreement was, within the meaning of the policy, sole, entire, unconditional, and absolute. (*Hough* v. *City Fire Ins. Co.*, 29 Conn. 10; 76 Am. Dec. 581; *Millville Mutual F. Ins. Co.* v. *Wilgus*, 88 Pa. St. 110; *Chandler* v. *Commerce F. Ins. Co.*, 88 Pa. St. 228; *East Texas F. Ins. Co.* v. *Dyches*, 56 Tex. 565; *Swift* v. *Vermont Mutual Fire Ins. Co.*, 18 Vt. 313; *Gaylord* v. *Lamar F. Ins. Co.*, 40 Mo. 16; 93 Am. Dec. 289; *Ins. Co.* v. *Crockett*, 7 Lea, 721; *Imperial Ins. Co.* v. *Dunham*, 117 Pa. St. 460; 2 Am. St. Rep. 686; *Elliott* v. *Ins. Co.*, 117 Pa. St. 548; 2 Am. St. Rep. 703.) Notwithstanding notice to the company that the building would be leased to a tenant, the policy expressly provided that this could only be done with the written consent of the company, and as this was never applied for or obtained, the plaintiffs have no claim. (*Wenzel* v. *Commercial Ins. Co.*, 67 Cal. 438.)

*Barclay, Wilson & Carpenter,* or Respondents.

The agreement between the lessee and the insured was a naked executory agreement to sell the insured premises, and as the vendor retained possession, and no part of the purchase-money was paid or any improvements made, the agreement did not constitute such an interest in the lessee, or such a sale or transfer, as would avoid the policy. (*Allen* v. *Mutual Fire Ins. Co.,* 2 Md. 111; *Jackson* v. *Mass. Mut. Fire Ins. Co.,* 23 Pick. 418; 34 Am. Dec. 69; *Kempton* v. *State Ins. Co.,* 62 Iowa, 83; *Hitchcock* v. *Northwestern Ins. Co.,* 26 N. Y. 68; *Strong* v. *Mfrs.' Ins. Co.,* 10 Pick. 40; 20 Am. Dec. 507; *Stetson* v. *Mass. Mut. Fire Ins. Co.,* 4 Mass. 330; 3 Am. Dec. 217; *Jackson* v. *Silvernail,* 15 Johns. 278; 3 Kent's Com. 261; *Perry Co. Ins. Co.* v. *Stewart,* 19 Pa. St. 48; *Clinton* v. *Hope Ins. Co.,* 45 N. Y. 454; *Ætna Ins. Co.* v. *Jackson,* 16 B. Mon. 242; *Masters* v. *Madison Co. Mut. Ins. Co.,* 11 Barb. 624; *Conover* v. *Mut. Ins. Co. of Albany,* 3 Denio, 254; *Orrell* v. *Hampden Fire Ins. Co.,* 13 Gray, 431; *Trumbull* v. *Portage Co. Mut. Fire Ins. Co.,* 12 Ohio, 306; *Phillipps* v. *Merrimack Mut. Fire Ins. Co.,* 10 Cush. 350; *Davis* v. *Quincy Ins. Co.,* 10 Allen, 113; *Hill* v. *Cumberland Ins. Co.,* 59 Pa. St. 474; *Boston etc. Ice Co.* v. *Royal Ins. Co.,* 12 Allen, 381; 90 Am. Dec. 151; *Kempton* v. *State Ins. Co.,* 62 Iowa, 83; *Haley* v. *Manufacturers' Ins. Co.,* 120 Mass. 292; *Shotwell* v. *Jefferson Co. Ins. Co.,* 5 Bosw. 247.) The provision in the lease that the lessee would pay one half of the expense in insuring the building, being made a part of the rent, negatives the idea of ownership in Stewart. (*Boston etc. Ice Co.* v. *Royal Ins. Co.,* 12 Allen, 381; 90 Am. Dec. 151.) The rule is, that policies of insurance should be construed liberally, to give effect to the intention of the parties; namely, the indemnity of the insured. (*Ætna Ins. Co.* v. *Jackson,* 16 B. Mon. 242; *Kitts* v. *Massasoit Ins. Co.,* 56 Barb. 17.)

BEATTY, C. J. — In March, 1890, we made a decision in this case reversing the judgment of the superior court, with directions to enter judgment on the findings in

favor of the appellant.  (23 Pac. Rep. 303.)  After a rehearing of the case, and upon fuller consideration of the questions involved, we are satisfied that our former decision was erroneous, and that the judgment of the superior court should be affirmed.

The action is upon a fire insurance policy.  Plaintiffs had judgment in the lower court, and defendant appealed from the judgment alone, claiming that upon the facts found, the judgment should have been in its favor.

The policy in suit was issued in August, 1887, and the property insured consisted of a frame building designed for a hotel or boarding-house.  The defendant was advised by the papers accompanying the application for insurance — which, by the terms of the policy, are made a part of the contract — that the building was occupied, or to be occupied, by a tenant (no particular tenant being named) for hotel purposes, and it is found by the court, as alleged in the complaint, " that before said insurance was effected, defendant had full knowledge that said building was built by plaintiffs for the purpose of renting the same for a boarding and lodging house, and was to be occupied by the tenant of the plaintiffs; the said building not being at that time fully completed and furnished."

After the insurance was effected and the building completed, the plaintiffs, on December 24, 1887, by a written lease demised the insured premises to one J. D. Stewart for a term of five years, at a fixed rent, payable monthly.  The lease also contained stipulations binding the plaintiffs to put in certain furniture, consisting of carpets, cooking-range, gas-fixtures, etc., and binding Stewart to put in other necessary furniture.  It was agreed that the building and furniture should be properly insured for the benefit of the parties as their interest might appear, and that Stewart, the lessee, should pay one half of the expense of insuring the building and the entire expense of insuring the furniture.

It was further agreed as follows: " Said party of the second part (Stewart) may at any time during said term

of five years purchase said hotel, lots, and premises for the sum of twenty-five thousand dollars cash, and likewise purchase said carpets, gas-fixtures, and range at cost price. .It is further agreed that said party of the second part will purchase said hotel, lots, and premises on or before five years from this date for the sum of twenty-five thousand dollars, together with said carpets, gas-fixtures, and range at their cost price."

The defendant had no notice of these stipulations for purchase and sale of the property. Under this lease and agreement, Stewart entered into possession of the insured premises, and so continued until the destruction of the hotel by fire, in April, 1888.

The plaintiffs thereafter, upon due notice and proofs of loss, demanded payment of the policy, which was refused by the defendant. Hence this action, which is defended on the ground of an alleged violation by plaintiffs of the following conditions of the policy: "*If the property be sold or transferred* (in whole or in part), or upon the commencement of foreclosure proceedings against, or a sale under a deed of trust, or the existence of a judgment lien, or the issue or levy of an execution against, any kind of property herein described; or if the property be assigned under any bankrupt or insolvent law, *or any change takes place in the title or possession* (except in case of succession by reason of the .death of the assured), whether by legal process or judicial decree, or voluntary transfer, assignment, or conveyance; *or if the title or possession shall be changed from any cause whatsoever;* or if this policy shall be assigned before a loss, without the consent of the company indorsed hereon, — this policy shall in each and every instance be void."

The passages which we have Italicized are those to which attention is particularly directed, the claim of appellant being that the lease and agreement of sale, and Stewart's possession thereunder, wrought a change both in the title and possession of the property insured, involving a forfeiture by plaintiffs of all rights under the policy.

In their argument at the rehearing, counsel for appellant took the position, for the first time, that possession by Stewart, under the lease and as a tenant merely, without regard to the contract of sale, was a violation of the provision of the policy against a change of possession. But clearly this position cannot be maintained, in view of the statement made in the application upon which the policy was issued, to the effect that the building was to be occupied by a tenant for hotel purposes, and the fact found by the court that defendant had full knowledge, before issuing the policy, of the purpose for which the building was being constructed, and that it was to be occupied by a tenant. Occupancy of the. identical character contemplated by the policy was not a change of possession. The issuance of the policy was an express consent to possession by a tenant, and since no particular tenant was named, it was a consent to occupancy by any tenant selected by the assured, subject, of course, to revocation by canceling the policy and returning the premium if an objectionable tenant was selected.

The real and only question in the case is, whether the contract of sale embraced in the lease, or superadded to it, wrought a change in the title to the insured premises within the meaning of the policy, or imparted to the possession of Stewart a character materially different from the possession of a tenant. Upon this question we held in our former decision, in accordance with the contention of appellant, that Stewart, by taking possession of the insured premises under the lease and agreement of December 24, 1887, not only acquired the right, but became absolutely bound to complete the purchase; that henceforth the buildings were at his risk; that if they were destroyed the loss would be his alone, because he was obliged at the expiration of his term as tenant, upon tender of a deed for the land without the buildings, to pay the full contract price of twenty-five thousand dollars. From this it necessarily followed that Stewart, from the time of taking possession, acquired an insurable interest equivalent to the value of the build-

ings, and that if plaintiffs could collect the insurance
and keep it, they would be paid twice over for the build-
ings, so that they would have a direct interest in their
destruction.  Of course, upon these premises it was im-
possible to avoid the conclusion that the effect of the
transaction with Stewart was to work a change in the
title, not merely nominal and technical, but substantial
and material to the risk, and necessarily violative of the
conditions of the policy.

But on a fuller consideration of the case, we are sa'is-
fied that the authorities cited in our opinion and in the
briefs of counsel did not warrant us in holding that,
under the circumstances of this case, Stewart, by taking
possession under the lease and contract of December 24,
1887, became absolutely bound to complete the purchase
of the premises at the expiration of his term, notwith-
standing the previous destruction of the buildings.

There can be no question that under such a contract
the equitable title to the land, as between the vendor
and vendee, is in the latter.   This is a familiar doctrine
of equity, based upon the principle that, for the preven-
tion of fraud and the enforcement of the just rights of
the parties, equity will deem that to be done which ought
to be done.   The maxim is applied most frequently in
actions by the vendee for specific performance of the
contract, or in aid of his defense when the vendor is
seeking to recover possession of the land upon his legal
title.   (*Laffan* v. *Naglee*, 9 Cal. 663; 70 Am. Dec. 678; *De
Rutte* v. *Muldrow*, 16 Cal. 505; *Hall* v. *Center*, 40 Cal. 63;
*Dowd* v. *Clarke*, 54 Cal. 48; *King* v. *Buckman*, 21 N. J.
Eq. 599.)

Decisions almost innumerable to the same effect might
be cited from the reports of this and other states, but
they do not decide the question involved in this case.

There is a wide distinction between the proposition
that the vendee in possession under an executory con-
tract of sale may maintain the possession against the
vendor as long as he performs his part of the agreement,
and upon full compliance may enforce specific perform-

ance of the vendor's contract to convey the legal title, and the proposition here contended for, viz., that the vendor in such a contract, notwithstanding the destruction of the subject of the contract, in whole or in part, before the date stipulated for payment and conveyance, and his consequent inability to make a conveyance of that for which the vendee has bargained, may nevertheless compel the vendee to pay the whole contract price in exchange for a fraction of the property sold.

When we come to make a critical examination of the cases cited to this point, and especially the cases in which the precise question we are considering is directly involved, we find that they lend a very slight support to the appellant's contention.

In the case of *McKetchine* v. *Sterling*, 48 Barb. 330, the doctrine is, it is true, carried to an extreme degree; but the authorities cited in support of that decision are not in point, and the reasoning by which they are made to support the decision is very unsatisfactory.

In *Richter* v. *Selin*, 8 Serg. & R. 439, the supreme court of Pennsylvania use this language: "Where a contract is made for the sale of land, equity considers the vendee as the owner of the estate sold, and the purchaser as a trustee for the vendor for the purchase-money. So much is the vendee considered, in contemplation of equity, as actually seised of the estate, that he must bear any loss that may happen to the estate between the agreement and the conveyance, and he will be entitled to any benefit which may accrue to it in the interval, because by the contract he is the owner of the premises to every intent and purpose in equity." But this was said *arguendo*, in deciding a case where the point was not directly involved, and the proposition, true enough in general, and in its application to the circumstances of that case, was stated in its most unqualified form, and without regard to the special circumstances which in many cases render it inapplicable.

Similar statements of the same doctrine are to be found in some of the insurance cases hereinafter referred

to, with reference to most of which it was correctly applied, as we shall see.

But we shall also see that the doctrine has its reasonable limitations, and that this is one of the cases to which it cannot be applied without doing the wrong and injustice which it was designed to prevent.

In the case of *Wells* v. *Calnan,* 107 Mass. 514, 9 Am. Rep. 65, the facts were, that the plaintiff agreed to sell the defendant a farm, and the defendant agreed to buy. On the day previous to that fixed for the payment and conveyance the buildings on the farm were destroyed by fire. The plaintiff tendered a conveyance in pursuance of the contract, and demanded payment of the purchase price, which being refused, he sued for damages. It was held that he could not recover, because by reason of the destruction of the buildings, he was unable to comply with the contract on his part. It is true, the vendee had not taken possession, and the court found it necessary to distinguish the cases in which lessees in possession had been held liable on their covenant to pay rent or make repairs notwithstanding the destruction of tenements by fire during the term. In those cases it was said the liability of the defendant resulted from the fact that the lessors had fully complied with their contracts, while in the case under consideration, the plaintiff was unable to do so.

There can be no doubt of the soundness of this distinction, and no difficulty, we think, in showing that it applies to the present case.

In the earlier Massachusetts case (*Thompson* v. *Gould,* 20 Pick. 124) it was applied, where the defendant was in possession and had paid the purchase price for the purpose of sustaining his right to recover back the money paid.

In that case the agreement of purchase and sale was by parol, but the plaintiff paid at different dates the whole purchase price and got receipts in writing specifying the purpose of the payments, and he had entered into possession of the house. Clearly, under the circum-

stances, he had put himself in a position to enforce specific performance of the contract to convey, and was the owner of the equitable title.   But before any conveyance was tendered, the house was destroyed by fire, and the plaintiff sued in *assumpsit* for the money paid.   In a well-considered opinion, the court held that he was entitled to recover back the money on account of failure of consideration.

It was conceded that the contract of the vendor, though by parol, could, under the circumstances, have been specifically enforced, but it was denied that it could have been enforced against the vendee after destruction of the house.

It may be said that in this decision the mere legal rights of the parties were regarded, and that the court could not act upon the equitable doctrine for want of jurisdiction; but it will be seen that the equitable doctrine was discussed in the opinion, and its reasonable limitations pointed out.

What those limitations are it is not necessary that we should consider exhaustively.   For the purpose of this decision, it is sufficient to say that no case has been cited, and we have discovered none in which the vendee has been held bound to pay the purchase price where a valuable part of the property has been destroyed before the day fixed for payment and conveyance, unless he has taken possession under the contract of sale, or has the right to such possession under the contract before the occurrence of the loss.

Now, in this case, it is to be remembered that the agreement between plaintiffs and Stewart consisted of a lease for a term of five years, reserving a rent, payable monthly in money, a stipulation giving Stewart the privilege of purchasing at twenty-five thousand dollars at any time during the term, and the contract binding him to purchase at twenty-five thousand dollars at the end of the term.

In considering the question before us, we may lay out of view the stipulation giving Stewart the privilege of

purchasing, for clearly he was not thereby bound to take the property and pay for it even if it remained whole and intact.   To determine the character of his possession with reference to the extent of his liability upon his agreement to purchase, the contract is to be viewed as if it consisted merely of the lease and the agreement to purchase.   Would Stewart, entering under such a contract at the beginning of the term demised, be deemed, for the purpose of enforcing a most inequitable liability, to have entered and to be holding under his contract of purchase?   Clearly he would not, if his possession could be referred to either the lease or the contract as distinct from the other; for there can be no doubt that during the term of the lease he would hold under that.   His right to remain in possession would depend on his payment of rent and performance of other covenants of the lease, and would be determined by failure so to pay and perform.

And we think that, for the purpose of determining his liability under his agreement to purchase, in case of destruction of a material part of the property sold prior to the time for payment and conveyance, this distinction between the lease and agreement ought to be made.   It is reasonable and equitable, and not opposed to any authority cited, unless the case in 48 Barbour, above referred to; should be deemed an authority against it.   If so, we can only say that we think that case goes to an unreasonable length, and that it ought not to be followed. On the contrary, we think the best-considered cases warrant us in holding that the liability of Stewart upon his agreement to purchase ended with the destruction of the hotel; that it was never at his risk, but was always at the sole risk of the plaintiffs.

But appellant contends that even on this view there was a change of title and possession within the meaning of the policy, and he cites a number of cases to sustain the proposition that the equitable ownership of a vendee under a contract of purchase constitutes a sole, absolute, and unconditional ownership, and consequently that the

vendor cannot also be the sole, absolute, and uncon-
ditional owner.    A review of these cases, however,
will show that they differ essentially from the case in
hand.

In the case of *Hough* v. *City Fire Insurance Co.*, 29
Conn. 10, 76 Am. Dec. 581, the legal title to the property
insured was in a trustee, who held it as security for
about sixteen hundred dollars, subject to which encum-
brance the plaintiff and two others owned the equitable
title in equal shares.    The plaintiff bought out his co-
owners, agreeing to pay each the sum of one thousand
dollars for his interest, and he had paid on his purchase
five hundred dollars to one and seven hundred dollars to
the other.    He had also taken possession of the land, and
erected a dwelling thereon at a cost of two thousand
seven hundred dollars, and was to receive a conveyance
from the trustee upon the payment of the sum secured
to him on the property.    Under these circumstances the
court held that it was not a misrepresentation on the
part of plaintiff in applying for insurance to state that
the property was *his*.    And it was also held that his
interest in the property was, within the meaning of the
policy, an *absolute* interest, because he could by no con-
tingency be deprived of it except by his own consent.
No doubt this case was correctly decided.

The plaintiff, by reason of his original interest in the
property, his payment to his co-owners upon the pur-
chase of their interests, and the money he had expended
in improvements on the property, independent of his
agreement to purchase, had bound himself to do so, and
he was the only person who could suffer loss by destruc-
tion of the property.    It was his, therefore, absolutely,
in every sense of the word material to the risk.    And
the decision was in line with hundreds of others in
which the courts everywhere have refused to defeat re-
covery upon insurance policies by giving effect to the
literal terms of clauses of forfeitures.    Such clauses are
always, and justly, construed with the utmost strictness
against the insurer, and always with reference to their

only legitimate object; i. e., the protection of the insurer against risks that are materially different from those which he has undertaken. The cases of *Millville Mut. Fire Ins. Co.* v. *Wilgus*, 88 Pa. St. 110, *Chandler* v. *Commerce Fire Ins. Co.*, 88 Pa. St. 223, *East Texas Fire Ins. Co.* v. *Dyches*, 56 Tex. 565, *Swift* v. *Vermont Mutual Ins. Co.*, 18 Vt. 313, and *Gaylord* v. *Lamar Fire Ins. Co.*, 40 Mo. 16, 93 Am. Dec. 289, are all substantially like the Connecticut case, and the decisions rest upon the same ground. In every instance the vendee had made large or complete payments upon his purchase, or valuable improvements, or both. In other words, he had given bonds to complete it, so that the loss must necessarily fall upon him in case of destruction of buildings.

The case of *Davidson* v. *Hawkeye Ins. Co.*, 71 Iowa, 532, 60 Am. Rep. 818, upon the authority of which, principally, our former decision herein was based, was another of the same sort. There the vendee had entered into possession of a small farm under a contract to purchase it for four hundred dollars, upon which fifty dollars was to be paid in cash. Prior to the sale, the vendor had, as in this case, procured insurance on a building on the farm. After the sale, the building was destroyed by fire, and the vendor sued on the policy. The defense was breach of a condition of the policy against any sale or conveyance of the property by the insured. The defense was sustained on the ground that there was *a sale* of the property. This ruling was clearly opposed to the decision of the supreme court of Maryland in *Washington Ins. Co.* v. *Kelly*, 32 Md. 421, 3 Am. Rep. 149, and to other decisions cited in the dissenting opinion.

It was rested also upon the false assumption that if the plaintiff could collect the insurance he could also collect the full purchase price of the building from his vendee, which would be holding, in effect, that the defendant remained bound by the policy after it became the interest of the assured to destroy the property.

But upon the doctrine of equity that the vendee in possession is the equitable owner of the property, and the vendor merely his trustee of the legal title, the money collected by the plaintiff on the policy would have been held in trust for the vendee, and applied on the purchase price (*Reed* v. *Lukens*, 44 Pa. St. 202; 84 Am. Dec. 425); so that in fact the plaintiff, even if he had been held entitled to recover on the policy, could have no interest in the destruction of the property. And so in this case, even if Stewart could be held bound by his contract of purchase after the fire, the plaintiff could gain nothing by collecting the amount of the policy. This, however, would be no answer to the objection of defendant that the title was changed in a sense material to the risk; for to hold that the plaintiff could collect the insurance for the benefit of his vendee would convert the transaction into a virtual assignment of the policy, which can never be done without the consent of the insurer.

We do not, therefore, rest our decision in any degree upon the ground that the plaintiffs could not possibly have derived an advantage from the destruction of the hotel, and have only alluded to the matter for the purpose of calling attention to the false quantity in the reasoning of the Iowa supreme court in the case cited in support of our former decision.

The cases of *Imperial Fire Ins. Co.* v. *Dunham*, 117 Pa. St. 460, 2 Am. St. Rep. 686, and *Elliott* v. *Ashland Mutual Fire Ins. Co.*, 117 Pa. St. 548, 2 Am. St. Rep. 703, cited on the rehearing, are essentially like the other cases cited to the same point, which we have already considered.

We conclude that there was in this case no change of title or possession material to the risk, and that the judgment of the superior court on the facts found was correct.

In reaching this conclusion, we have not overlooked the argument based upon the fact that Stewart agreed to pay one half of the premium on the insurance of the hotel. That agreement is evidently one of the terms of

the lease, as contradistinguished from the agreement to purchase.

The judgment is affirmed.

PATERSON, J., HARRISON, J., DE HAVEN, J., and GAROUTTE, J., concurred.

McFARLAND, J., concurred in the order of affirmance.

Rehearing denied.