[L. A. No. 4181.   Department Two.—April 16, 1918.]

## HATTIE O. COOPER et al., Respondents, v. H. H. HUNTINGTON et al., Appellants.

[L. A. No. 4182.   Department Two.—April 16, 1918.]

## HELLMAN COMMERCIAL TRUST & SAVINGS BANK (a Corporation), Appellant, v. T. J. CONDON et al., Respondents.

VENDOR AND VENDEE — RESCISSION — REPRESENTATIONS BY VENDOR OF SUFFICIENCY OF WATER SUPPLY.—Where the vendors of land and their representatives assured the vendees before they contracted for the purchase of the property that there was, and would continue to

be, a constant supply of water to the amount indicated by the contracts of sale, and that there was in a near-by canyon a dam and reservoir with ample supply of water to irrigate the whole valley in which the lands were situated, while the trial court, on sufficient evidence, found that at times there was not sufficient water for domestic use, and that there never had been sufficient water for irrigation at all times of the year when irrigation was necessary for the raising of crops, the vendees were in a position to withdraw from the contract before its partial consummation by payment of any part of the purchase price under it.

ID.—LACHES—ESTOPPEL—VENDORS ESTOPPED FROM SETTING UP LACHES OF VENDEES.—Where the vendors, by assurances and promises from time to time that, if given a little more time, they would supply water to the vendees, and that improvements in the water system then being made would insure a bountiful supply, induced the purchasers to remain on the premises and endeavor to cultivate the land and to postpone any efforts to rescind the agreements, the vendors and all interested with them were estopped from setting up laches on the part of the vendees as a defense to their right to rescind.

ID.—DEFINITE PROMISES NOT MERE MATTERS OF OPINION.—Where the vendors in such case promised the vendees a definite quantity of water, the representations made to the vendees were not mere matters of opinion, but amounted to promises that by means of their improved facilities of the water system they could and would furnish the agreed quantity.

ID.—WASHING AWAY OF SOIL BY FLOOD—NEW MATTER—SUPPLEMENTAL PLEADING.—The washing away of about four acres of the soil after the commencement of the action was new matter entitling the vendees to additional relief, and it was not error under the circumstances to permit the vendees to set up such new matter in a supplemental pleading.

APPEAL from a judgment of the Superior Court of Los Angeles County.   G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

Sheldon Borden, and George H. Moore, for Appellants.

Kemper Campbell, Frank P. Doherty, W. J. Clark, and Edward E. Leighton, for Respondents.

MELVIN, J.—These two cases involve substantially the same questions of law and fact and will, therefore, be treated in one opinion.   The appeals are from the judgments.

CLXXVIII Cal.—11

The Hellman Commercial Trust & Savings Bank, formerly known as Merchants Bank & Trust Company, was the nominal owner of the properties involved in both actions, which were certain lots of "Tract 1292," in the San Fernando Valley in Los Angeles County. This corporation, which we will designate as "the Bank," was in reality a trustee for the equitable owners, Huntington and Brookins.

*The Condon Case.* Under date of March 25, 1912, the Bank entered into a contract with T. J. Condon for the sale to him of lots 16 and 17 in the tract for three thousand five hundred dollars, in four installments of $875 each with certain interest on deferred payments. The sum of $875 was paid by the vendee at the time of the execution of the agreement. By the terms of the contract the Bank promised to grant to Condon without cost to him one and one-third miner's inches of continuous flow of water and "a 10-240 interest in the reservoir and complete distributing system." The water was described as a part of that conveyed to the Bank by a designated deed of certain date from the Tejunga Company. The deed in question conveyed to Condon's vendor thirty-three inches continuous flow, subordinate, however, to rights of previous purchasers to 333 inches.

On June 18, 1913, the Bank filed its complaint to quiet title as against Condon, and one month later the vendee served notice of rescission of the contract and verified and filed his answer and a cross-complaint. In the latter he prayed rescission of the agreement upon the ground that at and prior to the time of the execution of the contract it was falsely represented that the vendee should have "a plentiful supply of water for domestic purposes, irrigation, and fire protection, viz., one and one-third miner's inches continuous flow."

In the answer the Bank set up the deed from the Tejunga Company and pleaded laches of the vendee in failing to seek rescission for more than a year after knowledge of the facts of which he complained.

The trial court found that false representations had been made to the vendee on which he relied, and that he had not been guilty of laches.

The *Cooper Case.* The Bank agreed to sell to Hattie O. Cooper and her son, Jos. L. Cooper, lots 31 and 32 for $3,250, in certain installments, the initial payment, which was made, being one thousand dollars. The agreement was dated May

28, 1912. The clauses with reference to water were the same as those in the Condon contract. On May 27, 1913, the vendees served notice of rescission, tendering a quitclaim deed to the property, demanding, however, return of the one thousand dollars and eight hundred dollars, which they alleged had been expended by them in improvements on the land. On May 28th they filed their complaint in a suit for rescission similar in all essential particulars to the cross-complaint of Condon. The judgment was in their favor and the findings were like those in the other case. The court also found that the improvements made by the Coopers were of the value of $450 and that there was a partial failure of consideration in two particulars, (1) because of the lack of a water supply, and (2) by reason of the damage done by a flood in February, 1914. In explanation of the latter finding we should call attention to the fact that, as appears from the record, negotiations for settlement were had between the vendor and vendees after the Coopers filed their complaint. This resulted in an arrangement for a settlement on the basis of a reduction of three hundred dollars in the purchase price in favor of the vendees. A letter embodying these terms was written by Mrs. Cooper and her attorney and received the sanction of the real owners of the land. A check for the amount of the agreed initial installment under this new alleged contract of sale was sent, but payment thereon was stopped, for the reason, as it appears, that a flood had washed away the soil from a substantial portion of the land described in the contract. The alleged agreement embodied in the letter and its indorsement, which latter was made in February, 1914, was set up by supplemental answer, to meet the allegations of a supplemental complaint filed by the Coopers. We are of the opinion that before partial consummation of this contract by a payment of any of the purchase price under it, the Coopers were in a position to withdraw from it.

Without reviewing the testimony in detail it is sufficient to say that before purchase of the properties by the Coopers and Condon, the vendor and its representatives assured them that there was, and would continue to be, a constant supply of water to the amount indicated by the contracts of sale. They were told that there was an abundance of water, and that in Tejunga Canyon there was a dam and reservoir with ample supply of water to irrigate all San Fernando Valley. The

evidence amply justified the finding of the court "that at times there was not sufficient water for domestic use, and there has never been sufficient water for irrigation at all times of the year when irrigation was necessary for the raising of crops."

But appellants insist that even conceding these representations to have been made, the proof of laches in each case is so clear that the respondents must be held to have accepted their contracts in spite of the scarcity of water, and that they were not in position to rescind because each was in default in payments due under the respective agreements when the notices of rescission were given. Undoubtedly, the vendees realized that they were not getting the water supply promised by the vendor and its agents, and if nothing had been done further by Condon and the Coopers, there would have been reason for a conclusion that they were barred by laches from seeking relief. But there was ample evidence to the effect, and the trial court found, that the purchasers were given assurances from time to time and that these promises induced them to remain upon the properties and to endeavor to cultivate the land. For example, it was in testimony that, at a meeting on the tract in July, 1912, Mr. Huntington, one of the owners, said that given a little more time they would supply water to the vendees. Dr. Hanson, the president of the water company, said all they wanted was a little time and plenty of water would be supplied. These promises were given from time to time, not only before this litigation, but the alleged compromise with the Coopers was induced by representations made by Mr. Huntington and others, that improvements in the water system then being made would insure a bountiful supply of water. Under these circumstances there is much force in the argument of respondents that the conduct of the vendor estopped that corporation and all who are interested with it from setting up the defense of laches on the part of the vendees. The Bank, after holding out such promises and thereby inducing the vendees to postpone any efforts to rescind the agreements, may not subject the said vendees to injury by disappointing the expectations on which they acted. (*Carpy* v. *Dowdell,* 115 Cal. 677, 686, [47 Pac. 695].)

Appellants cite such cases as *Owen* v. *Pomona Land & Water Co.,* 131 Cal. 530, [63 Pac. 850, 64 Pac. 253], in

which it was held that where water shares were sold with certain land, the prediction by agents of the vendor that wells furnishing the water would always yield as abundantly as they were then providing was but an expression of opinion in the absence of any guaranty that the supply of water would be permanent. There is nothing in that authority, or in the other cases cited, which is in conflict with the conclusion reached by the court in this case. In the contract now before us the grantor promised a definite quantity of water, and the representations made to the vendees were not mere matters of opinion, but amounted to promises that the water company by means of its improved facilities could and would furnish the agreed quantity of water. The facts in this case bring it within the rule announced in such authorities as *Hill* v. *Wilson*, 88 Cal. 92, 95, [25 Pac. 1105], to the effect that assurance by a vendor that the land to be sold is well watered during the irrigation season is not the mere utterance of an opinion. (See, also, *Tracy* v. *Smith*, 175 Cal. 161, [165 Pac. 535].)

Complaint is made by appellant that there was grave error committed in permitting the Coopers to file a supplemental complaint. By this pleading it was averred that about the 20th or 21st of February, 1914, the consideration for the contract failed in a material respect, because the soil of about four acres of the ten which the Coopers had contracted to purchase was washed away and destroyed by flood waters. This is surely the allegation of new matter occurring after the commencement of the original action, entitling the plaintiffs to additional relief, and we think a supplemental complaint was proper under the circumstances. (*Melvin* v. *E. B. & A. L. Stone Co.*, 7 Cal. App. 324, 326, [94 Pac. 389].) By its answer appellant emphasized the fact that the relations of the litigants had altered after the commencement of the action by pleading an alleged new contract made by way of compromise.

But it is argued that the loss caused by the washing away of the soil must fall on the Coopers (so appellant contends), because they had received the consideration by being permitted to occupy the premises prior to the flood. In this behalf, appellant's counsel cite language from *Conlin* v. *Osborn*, 161 Cal. 659, [120 Pac. 755], in which, in analyzing the opinion in *Smith* v. *Phoenix Ins. Co.*, 91 Cal. 323, 330, [25

Am. St. Rep. 191, 13 L. R. A. 475, 27 Pac. 738], we said that the court had there adopted the rule that "the destruction by fire of buildings on property *in the vendor's possession* prior to the date fixed for the payment of the purchase price and the conveyance of the title, defeats the vendor's right to compel performance on the part of the intending purchaser under the contract." But that did not amount to a decision that under no contract may there be a failure of consideration, of which a *vendee* in possession may avail himself. Indeed, in the very case of *Smith* v. *Phoenix Ins. Co., supra,* cited by appellant, the court referred with approval to *Thompson* v. *Gould,* 20 Pick. (Mass.) 134, wherein a vendee in possession, who had paid the whole purchase price, recovered the money because of destruction by fire of a material part of the consideration before any conveyance had been tendered.

No other matters discussed in the briefs require analysis.

Judgments are affirmed.

Victor E. Shaw, J., *pro tem.,* and Wilbur, J., concurred.

Hearing in Bank denied.