[No. 34171.   Department Two.   October 10, 1957.]

ELIZABETH SCROGGIN, *Respondent*, v. MARVIN L. WORTHY *et al.*, *Appellants.*[1]

[1]Reported in 316 P. (2d) 480.

*Henry Opendack*, for appellants Worthy.

*Patrick H. Murphy*, for appellants Corkery and Jones.

*Clausen & Gemmill* and *Joseph E. Hurley*, for respondent.

FOSTER, J.—Worthy and wife, purchasers under an assigned executory contract for the sale of real estate in Kennewick, appeal from a judgment against them for the fraudulent sale of that property to respondent, Elizabeth Scroggin. The judgment was also against their real-estate brokers, Corkery and Jones, and their salesman, Muehle, who did not appeal. Corkery and Jones appeal separately.

The property consists of a restaurant, trailer park, and service station, which was leased to an oil company upon a gallonage rent with a minimum cash monthly rental of one hundred fifteen dollars. The restaurant was leased to Mr. Lee for one hundred dollars a month.

The following facts found are supported by a preponderance of the proofs.

The defendant Muehle was a licensed real-estate salesman whose license since January 1, 1955, was registered in the office of the appellants Corkery and Jones, real-estate brokers in Spokane, where all parties reside. Muehle was an employee of Corkery and Jones and, in the course of that employment, sold the property to Elizabeth Scroggin for thirty-five thousand dollars.

To induce the purchase, Muehle represented to respondent Scroggin that the property was producing a gross monthly

income of five hundred fifty dollars, namely, one hundred dollars per month from the restaurant, one hundred fifty dollars per month from the service station, and three hundred dollars from the trailer park, and that the property was in excellent condition.

Respondent Scroggin purchased the property in reliance upon the truth of such representations. The representations were false and were known to be so by the Worthys, and such representations were made for the purpose of inducing respondent to purchase the property. The respondent had the right to rely on such representations. Respondent's damage is proved by the only credible evidence on that issue.

That Muehle made the representations claimed scarcely admits of doubt. Respondent testified positively and repeatedly that he did so, which he did not even deny though he was a witness and testified to many other matters. His defense went no further than that his representations were based upon ignorance and, consequently, were unintentional, and that he was, therefore, immune from the consequent damage sustained by his client. His information was supplied by appellant Worthy, who does not deny that he authorized Muehle to make the representations supplied by him.

Worthy's knowledge of the falsity does not rest upon circumstances, for the county health officer testified without equivocation or evasion that, in the summer preceding the sale, he personally advised Worthy the trailer park had been condemned because the sewers were discharging raw sewage upon the surface.

Appellants complain that respondent had no right to rely on such representations because she made an independent investigation. We find the argument unconvincing. Respondent did visit the property late in February, 1955, about a month after the purchase contract was made. On that occasion, the service station operator told her that he had heard the trailer park had been condemned, whereupon she went to the city health office and made appropriate

inquiry. She then learned that the sewer was outside the city, and the county health officer had the matter in charge.

That official was then absent and she was unable to wait. Immediately upon her return to Spokane, at her request, Muehle called appellant Worthy by telephone, who then said that the property had not been condemned because of a defective sewer or for any other reason. Respondent did not rest there but called Worthy herself, and he reasserted his false representations. The proofs are overwhelming.

■ The appellants argue that the renewal of the fraudulent representations does not relieve respondent of the duty to pursue her independent investigations. This court held otherwise in *Forsyth v. Dow*, 81 Wash. 137, 142 Pac. 490, and said:

"There are three suggested reasons for sustaining the judgment of the lower court and for denying the plaintiff the benefit of his verdict and judgment. Plaintiff admitted that he was told, before the trade was consummated, that the motors could be purchased for a less sum of money than he paid; that he had heard that the motors could be purchased for less money; but he says that, when he took the matter up with defendants, they quieted his suspicions and made him believe that they were paying the full price to the electric company. Plaintiff is corroborated by two witnesses who testified to conversations in which their deceit was admitted."

The matter was dealt with at length by the California district court of appeal in *Kalkruth v. Resort Properties*, 57 Cal. App. (2d) 146, 134 P. (2d) 513. It was there said:

"When Wells, a stranger to Kalkruth, said the cabin had been built on the wrong lot, Kalkruth immediately and naturally consulted a man who should have knowledge of the facts, namely, the president of the vendor corporation who was active in the management of its affairs. Lyon and Kalkruth returned to the cabin and made measurements. Lyon, who should have known the true facts, assured Kalkruth that everything was all right. We see nothing unusual in Kalkruth accepting this assurance as true as against a statement of a stranger to the contrary. We believe that when, as here, the buyer has only a suspicion of the fraud, and the seller who has defrauded the buyer,

lulls the buyer into a sense of security by both words and conduct, the seller should not be permitted to assert that the buyer had lost his rights by waiving the suspicion and accepting the reassurance of the seller that no fraud had been perpetrated. This rule was applied in *Curtis v. Title Guarantee etc. Co.,* 3 Cal. App. 2d 612 [40 P. 2d 562, 42 P. 2d 323], where it was said:

" 'Respondent testified that when she saw the university buildings were not being constructed she talked to an agent of respondent, [appellant] who explained the delay by informing her that representatives of the university were in the east raising money. This apparently quieted her fears and she made her payments. Where the vendor by promises or representations to the vendee causes the vendee to postpone efforts to rescind the contract the vendor cannot urge the failure of the vendee to rescind within the time during which the vendee's fears of fraud have been lulled by such representations. (*Cooper v. Huntington, supra,* [178 Cal. 160 (172 P. 591)].)' (See, also, *Lozier v. Janss Investment Co.,* 1 Cal. 2d 666 [36 P. 2d 620].)"

Such, likewise, was the rule followed in *Converse v. Blumrich,* 14 Mich. 108; *McWilliams v. Barnes,* 172 Kan. 701, 242 P. (2d) 1063; *Bagdasarian v. Gragnon,* 31 Cal. (2d) 744, 192 P. (2d) 935. See, also, 37 C. J. S. 278, 281, § 34 (d).

■ Moreover, *caveat emptor* does not apply to a misrepresentation of a material fact made for the purpose of inducing a sale. That subject was quite recently considered by the United States court of appeal in *Byrnes v. Mutual Life Ins. Co.,* 217 F. (2d) 497 (C. C. A. 9th), in which District Judge Yankwich announced the court's conclusions in the following language:

"In the olden days, under the doctrine of *caveat emptor,* courts were inclined to think that a man dealt with another at his peril and that he should be on the lookout for possible deception, failing which, he would be penalized as negligent in failing to discover the fraud that was being perpetrated on him. The modern rule is against such an attitude. A man who deals with another in a business transaction has a right to rely upon representations of facts as the truth. Restatement, Torts, § 540; Prosser on Torts, pp. 748-749; 23 Am. Jur., Fraud and Deceit, § 1446. *Illinois Bankers' Life Ass'n v. Theodore,* 1934, 44 Ariz. 160, 34 P. 2d 423; *Lahay v. City Nat. Bank,* 1891, 15 Colo. 339, 25 P. 704; *Seeger v.*

*Odell*, 1941, 18 Cal. 2d 409, 415, 115 P. 2d 977, 136 A. L. R. 1291. These authorities sustain the view that one who has intentionally deceived another shall not be heard to say that the other person should not have trusted him. As the Supreme Court of Vermont said in an old case,

"'No rogue should enjoy his illgotten plunder for the simple reason that his victim is by chance a fool.' *Chamberlin v. Fuller*, 1887, 59 Vt. 247, 256, 9 A. 832, 835, 836."

This court reached the same conclusion in *Wooddy v. Benton Water Co.*, 54 Wash. 124, 102 Pac. 1054.

But appellants Corkery and Jones contend that they are not liable for the misrepresentations of their salesman Muehle because he was acting outside his scope of authority, and that Worthy asked him to find a purchaser before Muehle entered their employ.

■ Muehle's employment by Corkery and Jones began on January 1, 1955. Respondent Scroggin never heard of the Kennewick property until later that month. Worthy's only contract to pay a commission was to appellants Corkery and Jones, which he paid in full. Muehle was their salesman. Corkery and Jones employed the lawyer to draw the necessary conveyances. Every element of agency is present, and, consequently, Corkery and Jones cannot escape responsibility for the wrongful act of their salesman in the partnership business for which he was hired.

■■ Five assignments of error by Corkery and Jones, and one by Worthy, are that the court erred in failing to make findings upon particular points. Such are not assignments of error but invitations to this court to search the record to see if we can find error. *Koster v. Wingard*, 50 Wn. (2d) 855, 314 P. (2d) 928. Rule on Appeal 42 (1) (f), 34A Wn. (2d) 44, as amended, effective January 2, 1953, and Rule on Appeal 43, 34A Wn. (2d) 47, as amended, effective January 2, 1953, require appellants to set out verbatim so much of the findings refused as are claimed to be erroneous.

■ The court computed the respondent's damage under the benefit of bargain rule recently approved in *Salter v. Heiser*, 39 Wn. (2d) 826, 239 P. (2d) 327. It is, in sub-

stance, that the measure of damage is the difference between the value of the property had it been as represented, and its actual value. The amount of the judgment is well within the proofs of value.

The judgment is affirmed.

HILL, C. J., DONWORTH, and ROSELLINI, JJ., concur.

[1]Reported in 316 P. (2d) 467.